## DAVIS *v.* FIRST NATIONAL BANK OF BLAKELY.

1. Where a suit was brought to cancel a deed, to have the land described in it decreed to belong to the plaintiff, to have an accounting, to recover double the usurious interest alleged to have been paid to the grantee, a national bank, and to obtain other equitable relief, if the plaintiff authorized her attorneys to enter into a consent decree fixing the amount required to be paid by her to the defendant in discharge of all liabilities against her and the property at $5,000, and expressly instructed them that she would not consent to a compromise or settlement of the case except upon such terms, to which the attorneys agreed, which instructions were known to the adverse party through its leading attorney; and if nevertheless the defendant's leading attorney persuaded the plaintiff's counsel to disregard such instruction, and induced them to consent to a decree fixing such liability at $15,000, declaring the debt to be hers and not that of her husband, as she alleged it was, and directing that in default of payment by her the land should be sold as provided therein, a consent decree so entered could be set aside by the client upon proper proceedings therefor, duly commenced.

2. If the consent decree involved in the present case should be set aside, the former case should be reinstated upon the docket for trial, and the parties should have the rights of prosecution and defense in reference thereto which they would have had before the consent decree was entered, together with any additional right which may be germane to the litigation.

3. In view of the character of the litigation in which the consent decree was entered, the fact that the allegations of the original petition largely covered the same ground as those now sought to be alleged, outside of the attack made upon the consent decree, and of the vague and contradictory character of many of such allegations in the present petition, other than those attacking such decree, direction is given that all of the allegations and prayers be stricken from the petition except those

attacking the consent decree in the former case. The striking of them on demurrer was error.

APRIL 17, 1913.

Equitable petition. Before Judge Worrill. Early superior court. July 9, 1912.

*Thomas E. Watson* and *J. B. Burnside,* for plaintiff.

*Little & Powell,* for defendant.

LUMPKIN, J. Mrs. M. C. Davis filed her petition against the First National Bank of Blakely, seeking to have a consent decree which had been previously rendered set aside, and to obtain other relief. Two amendments were made thereto. General and special demurrers were filed, and were sustained; and the plaintiff excepted.

1. An important question arises as to the authority of an attorney to bind his client by a compromise resulting in a consent decree, in direct opposition to the instructions of his client, and with the knowledge of the leading counsel of the adverse side of such violation of instructions. On behalf of the defendant reliance is placed upon Civil Code § 4955, which reads as follows: "They [attorneys] have authority to bind their clients in any action or proceeding, by any agreement in relation to the cause, made in writing, and in signing judgments, entering appeals, and by an entry of such matters, when permissible, on the dockets of the court; but they can not take affidavits required of their clients, unless specially permitted by law." This section has been in each code since the first, which is generally called the Code of 1863, because its operation was suspended from the time when it was first contemplated that it should take effect (January 1, 1862) until January 1, 1863. In the first code it appeared as section 382. It did not originate from a legislative enactment, but was a codification of the rule previously existing, and arising from the decisions of courts. In such a case it has been held that the decisions will be looked to in construing the section thus codified. *Bush & Hattaway* v. *McCarty Co.,* 127 *Ga.* 308, 310 (56 S. E. 430, 9 Ann. Cas. 240); *Calhoun* v. *Little,* 106 *Ga.* 336 (3), 343 (32 S. E. 86, 43 L. R. A. 630, 71 Am. St. R. 254); *Ocean Steamship Co.* v. *Way,* 90 *Ga.* 747 (17 S. E. 57, 20 L. R. A. 123). This section did not confer upon attorneys any new authority, but stated in a terse form the pre-existing general rule derived from the sources to which the codifiers were authorized to look. To take such a general rule and

slavishly adhere to its letter, without looking to its spirit and mean-
ing, would be substantially to violate the rule in endeavoring to
adhere to it.    It is a well-established maxim, qui hæret in litera
hæret in cortice (liberally translated by Brougham, "He who
considers merely the letter of an instrument goes but skin-deep into
its meaning").   Let us then look to the derivation of this rule, and
to the decisions of this and other courts in regard to it.

In England, after some conflicting discussion, it seems now well
settled, by the later decisions, that an attorney, by virtue of his
general retainer, has power to compromise a suit, provided he does
not violate the instructions of his client in so doing; and that such
a compromise will bind his client, even if he does violate instruc-
tions, unless the violation is known to the adverse party.   A dis-
tinction has been drawn between matters directly involved in the
litigation and matters collateral thereto.   3 Am. & Eng. Enc. Law
(2d ed.), 362; Prestwich *v.* Poley, 18 C. B. (N. S.) 806.   In
America there is some conflict of authority, but the greater num-
ber of decisions hold that an attorney has no power to compromise
a claim, action, or judgment of his client.   Clark *v.* Randall, 9
Wis. 135 (76 Am. D. 252, and note 261, 262) ; Levy, Simon & Co.
*v.* Brown, 56 Miss. 83, 88; Whipple *v.* Whitman, 13 R. I. 512 (43
Am. R. 42).   Where the latter rule prevails, it has been said that
the fact that a compromise made by an attorney in excess of his
authority has been consummated by a consent judgment entered
in pursuance of it does not render the compromise thus consum-
mated binding on the client, although it will make the court less
inclined to disturb it, and will render prompt action and a rea-
sonable show of merit on the part of the client necessary to secure
its annulment.   3 Am. & Eng. Enc. Law (2d ed.), 362.   On the
other hand it has been held that "In an action by a client to set
aside a judgment against him, rendered without his authority
upon a compromise of his claim by his attorney at law, his right
of recovery in the action in which such judgment was rendered
will not be inquired into; but the judgment should be set aside, the
suit be again placed upon the docket, and the case proceed in the
same manner as if such judgment had never been rendered."
Smith's Heirs *v.* Dixon, 3 Met. (Ky.) 438.   See also Dalton *v.*
West End Street Railway Co., 159 Mass. 221 (34 N. E. 261, 38
Am. St. R. 410).   It is unnecessary to discuss the limitations upon

this rule, such as a failure to make the application within a reasonable time, the question whether the parties can be put in statu quo, etc.

Under the English rule the authority of an attorney in regard to the litigation was analogized to that of a general agent. But where that rule has been adopted, it has generally been declared that an attorney at law can not make a compromise of a litigation, and consent to a judgment or decree to carry it into effect, against the express instructions of his client, when such instructions are known to the other party. Thus, in Wharton on Agency, after the author has advocated the English rule, he says (§ 594) : "If the opposite party knows that the attorney is without authority or acts in disobedience to his client, the compromise will not be enforced to the injury of the client." · Beliveau v. Amoskeag Manufacturing Co., 68 N. H. 225 (40 Atl. 734, 44 L. R. A. 167, 73 Am. St. R. 577) ; Weeks on Attorneys, § 228; Brady v. Curran, 2 I. C. L. 314; Strauss v. Francis, L. R. 1 Q. B. 379.

Not long before our first code was adopted, the question of the authority of counsel was the subject of much discussion in England. In 1854 Samuel Swinfen died, leaving a will. Its validity was contested. Sir F. Thesiger, afterward Lord Chelmsford, appeared for the legatee, who was also the executrix of the will. He entered into a written memorandum of compromise, by one of the terms of· which the estates were to be conveyed by the ˈplaintiff to the defendant, and the defendant was to secure to the plaintiff an annuity for her life. It was agreed that either party could make this agreement a rule of court. A juror was thereupon withdrawn, and the compromise was made a rule of the court of common pleas. Mrs. Swinfen insisted that the arrangement had been made not only without her sanction but directly in opposition to her wishes, and she declined to perform it. A rule nisi was obtained against her· to show cause why she should not be attached for contempt for disobedience of the rule. The three judges of the common pleas were of the opinion that she was bound by the consent of her counsel; but they thought that there was not sufficient evidence of a demand for performance, and a refusal on the part of Mrs. Swinfen, to justify an attachment. Swinfen v. Swinfen, 18 C. B. 485 · (O. S.) 485, decided in 1856. Another application for attachment was made. Crowder, J., delivered an opinion, declaring that

45

Mrs. Swinfen was not bound by the compromise.   Creswell, J., who, on the former hearing, had declared that the client was bound, now stated, that, "As the validity of that agreement must be discussed before another tribunal, we are anxious that the question should be as little prejudiced as possible by anything that passes in this court," but personally expressed his sympathy for the distinguished advocate who had been attacked.   Swinfen v. Swinfen, 1 C. B. (N. S.) 364, decided in 1857.   After the refusal of the attachment, Swinfen filed his supplemental bill, praying that Mrs. Swinfen be decreed to specifically perform the agreement for a compromise, or, in the alternative, that another issue devisavit vel non be directed.   The Master of the Rolls held that there should be a new trial, and that the prayer for specific performance should be denied.   He said: "Upon what principle, then, can it be said, that an attorney has an implied authority to compromise the subject-matter of a suit which he is employed to conduct?   How far does it reach?   Does such implied authority extend so far as to enable him to sell the subject-matter of the suit?   Yet, in point of fact, a compromise is nothing more than a sale between the parties, upon certain terms.   .   .   There may be cases in which questions of very considerable nicety may arise, as to whether a particular matter consented to is or is not properly one relating to the conduct and management of the cause.   If it be, then I do not doubt that it is within the scope of the implied authority of the solicitor in the conduct and management of the cause; but if it be not, then I think that it is not within the scope of his authority."   Swinfen v. Swinfen, 24 Beavan, 549 (1857).   On appeal the general question as to the power of counsel to bind their clients by compromising cases in litigation was not determined, but it was held that, "under the circumstances of this case," the agreement was not one which a court of equity would enforce.   Swinfen v. Swinfen, 2 DeG. & J. 381 (1858).   After this Mrs. Swinfen brought an action against her counsel, who had then become Lord Chelmsford, to recover the costs and expenses to which she had been subjected in the litigation arising out of the compromise.   On the hearing in the Court of Exchequer the Barons presiding were all of the opinion that, under the facts of the case, the defendant was not liable; but they were not agreed as to all the points involved. Swinfen v. Chelmsford, 5 Hurl. & Nor. 890 (1860).   In so far as

the decision involved a difference between the authority of a barrister and that of an attorney in the management of a cause, such distinction is of little or no importance in this country. It will appear from the history of the Swinfen litigation that the client was finally held not to be bound to comply with the compromise which had been agreed upon by her counsel against her instruction, and made a rule or order of court; but, under the facts of the case, counsel was held not to be liable for the costs and expenses which had accrued to the client in the litigation arising out of the compromise.

In 1859, the case of Fray v. Voules, 1 El. & El. 837, was decided. An attorney of the name of Voules, against the directions of his client, compromised her case, and a consent order was taken therein. She sued him for damages; and it was held that "An attorney retained to conduct a cause, and having express directions from the client not to enter into a compromise, has no power, under such retainer, to enter into any compromise, even though it be reasonable and bona fide, and for the benefit of the client, and, if he do so, is liable to an action for damages, though the damage actually sustained be nominal."

These cases have been somewhat fully set out, because shortly thereafter our first code was framed and adopted, and they throw light upon the existing state of the decisions in England at that time. Three sections of the original code are relevant to the subject under consideration. Section 382 has already been quoted in full. It referred to the authority of attorneys to bind their clients in any action or proceeding, by any agreement in relation to the cause, made in writing, etc. Section 383 declared that "Without special authority attorneys can not receive anything in discharge of a client's claim but the full amount in cash." Section 385 referred to relieving a party from the results of the conduct of an attorney who assumed to represent such party without authority. Let us now review the decisions of this court bearing on the subject of compromises of litigation by attorneys, and their power to bind their clients thereto by consenting to judgments or decrees. It may be stated that the code and the decisions generally follow the English rule, at least in part; and that the decisions hold that if an attorney at law consents to the taking of a compromise decree in a case in which he is employed, it is binding upon his client, in the

absence of fraud or of violation of express directions given by his client and known to the adverse party or his attorney. But the writer has found no decision of this court in which it has been held that if an attorney consented to a compromise judgment in direct violation of his client's instruction, and this was known to the adverse party, the judgment could not be set aside. Nor has he found any decision of this court holding that a compromise of a litigation by an attorney would bind his client, in the absence of authority from the latter, except where a consent verdict, judgment, or decree was taken.

In *Lyon* v. *Williams,* 42 *Ga.* 168, it was held that a confession of judgment by counsel, without any special authorization to that effect, was sufficient to bind his client. In *Platen* v. *Byck,* 50 *Ga.* 245, it was held that, without special authority, an attorney could bind his client by an agreement for the dissolution of a garnishment and the depositing of the fund to await the event of the suit. In the opinion of McCay, J., occurs this significant statement: "It is no answer to say that Mr. Hardin [the attorney for the complaining party] acted unwisely, or even corruptly, in making this agreement, unless Byck [the other party] was a party to or had knowledge of the corruption." The intimation is that if the other party had been affected with knowledge it would have made a difference. In *Glover* v. *Moore,* 60 *Ga.* 189, it was held that a married woman who entrusted the defense of a suit at law to counsel chosen by herself was bound by his acts to the extent that any other suitor would be; and that if her plea were withdrawn by her counsel on terms executed by the other side, and judgment were rendered against her without any fraud on the part of her adversary or his counsel, such judgment would be binding on her. No question of the making of a compromise by counsel against the express direction of his client was involved.

In *Williams* v. *Simmons,* 79 *Ga.* 649 (7 S. E. 133), it was again ruled that a decree rendered by consent of counsel for a married woman, without fraud, would bind her, as it would bind other litigants. In the opinion there are some expressions to the effect that it is no answer to a solemn judgment of a court, rendered by consent of counsel, for the client to come in and say that the counsel misrepresented the client's interests or wishes; and that if the client were injured thereby, she would have an action against

the attorney. But such expressions must be taken in connection with the question under consideration. It appears distinctly that no question of any limitation on the authority of the counsel who agreed to the decree was involved, and no knowledge by the other party of any such limitation, though there was knowledge of an absence of express authority,—which, under former rulings, was unnecessary. This appears from the statement of what the court construed the allegation of an amended answer under consideration to mean. It was said (p. 653) : "She does not intimate that he was not retained as counsel for these causes in her behalf, or that his powers were more limited than the general powers which appertain to the position of counsel. Moreover, she does not allege any fraud on the part of her counsel or any collusion with him."

In *Lewis* v. *Gunn*, 63 *Ga.* 542, and *Perkerson* v. *Reams*, 84 *Ga.* 298 (10 S. E. 624), and other similar cases, no question of the violation of an express direction not to compromise, known to the adverse party or his counsel, was involved.

The question of the power of an attorney to bind his client by a consent judgment, in spite of a direction by the client not to compromise, was before this court in *Rogers* v. *Brand*, 133 *Ga.* 759 (66 S. E. 1095). The Justices at that time constituting the court were evenly divided in opinion, Chief Justice Fish, Presiding Justice Evans, and the writer being of the opinion that the client in that case should not be held bound, but the judgment should be set aside; while Justices Beck, Atkinson, and Holden were of the contrary opinion. The judgment accordingly was affirmed by operation of law. In *Rogers* v. *Pettigrew*, 138 *Ga.* 528 (75 S. E. 631), the attorney for the plaintiff in the case last cited, who had made the compromise, sought to foreclose his lien for fees on certain land which was awarded to his client by the consent decree. It was held that an attorney who compromises his client's case against the latter's express direction is not entitled to any compensation. In the opinion Presiding Justice Evans cited Fray *v.* Voules (sub nomine Fray *v.* Vowles), 1 El. & El. 837, and said: "A litigant has the right to insist that his case be adjudicated according to the established rules of law and procedure. When he instructs his attorney not to compromise his case, the attorney is bound by such instructions, and is not at liberty to violate them, even though the attorney honestly believes a compromise settlement would be to

the best interest of his client." This judgment was concurred in by all the Justices except Atkinson, J. Between the dates of the two decisions Holden, J., had resigned and Hill, J., had been appointed in his stead. It can not be readily understood how it can be held that a litigant has a right to insist that his case be litigated and not compromised, and that when he instructs his attorney not to compromise the case the latter is bound by such instructions, and is not at liberty to violate them; and yet how it can at the same time be held that if this want of authority on the part of the attorney is known to the other party or his attorney, such party can nevertheless bind the client by obtaining the agreement of an attorney without authority, who is known to be committing a breach of duty in making such agreement. A general agent can ordinarily bind his principal, within the scope of his agency, by an agreement with a person who is not aware of any limitation on his authority, but the principal has the power to limit his authority by instructions; and if such limitation is known to the person contracting with the agent, there is no rule of law which will hold the principal bound by such wrongful contract. If a compromise so made by an attorney has taken the form of a consent judgment or decree, this can be set aside on proper proceedings duly instituted by the client.

Section 4955 of the Civil Code does not mean that when a client employs an attorney to bring or defend a suit, it ceases to be the client's litigation, that he has no power to say whether he will litigate or compromise his suit, and that the attorney becomes the owner or absolute master of the litigation, so as to be able to sell or give away his client's property rights by contract, in spite of his client. This is a very different thing from the management of the litigation and agreements connected therewith, such as agreeing to a reference of the case to an auditor or a submission of it to arbitration, to allow copies of papers to be used in evidence, to waive notices, and the like. Neither does the statutory lien which an attorney has upon a suit, which ordinarily prevents his client from settling or dismissing the case so as to defeat him of his fee, have the effect to entirely oust the client from the case.

It was contended that fraud, in order to set aside a judgment, must be fraud on the part of the adverse party or his attorney; and expressions of this sort have been used in some of the decisions.

But they were cases where the magistrate forgot to notify a litigant of the time when a case would be heard, as he had agreed to do, or where the fraud alleged was that of some third party. In none of them was a violation of duty by an attorney, with knowledge of the adverse party, involved. If one knowingly obtains from an attorney at law or agent, by agreement, a surrender of the property rights claimed by his client or principal, in spite of instructions to the contrary, what name shall be given to the conduct of the party inducing the agent or attorney to violate his duty? In Holker v. Parker, 7 Cranch, 436 (2 Curt. 606, 3 L. ed. 396), the ruling actually made was that an attorney at law, merely as such, has no right, strictly speaking, to make a compromise for his client. In the opinion Chief Justice Marshall makes this pointed statement: "Though it may assume the form of an award, or of a judgment at law, the injured party, if his own conduct has been perfectly blameless, ought to be relieved against it. This opinion is the more reasonable, because it is scarcely possible that in such a case the opposite party can be ignorant of the unfair advantage he is gaining. His conduct can seldom fail to be tainted with some disingenuous practice; or, if it has not, he knows that he is accepting a surrender of the rights of another, from a man who is not authorized to make it." If an attorney, under his general implied powers, has authority to compromise a case with one who is not aware of any express limitation on such authority, still this language is applicable if the adverse party knows of the violation of instructions by the attorney in making the compromise.

2. In the case before us it appears that a suit was brought by a married woman for the purpose of setting aside a deed and having the property described decreed to belong to the plaintiff; also to have an accounting, to recover against the grantee, a national bank, double the amount of certain usurious interest alleged to have been paid, under section 5198 of the Revised Statutes of the United States; and for other equitable relief. By amendments the action was shaped so as to be one to recover such double interest only. It was held by this court that a demurrer to the petition as amended was properly overruled. *First National Bank of Blakely v. Davis,* 135 *Ga.* 687 (70 S. E. 246). When the case was returned to the superior court, a compromise was agreed upon by counsel for both sides. The amendments which had been made to the

petition were withdrawn, so that the petition stood as originally
filed. A consent decree was agreed upon by counsel for both parties,
and signed by the court. The plaintiff in the former action then
brought the present equitable petition, and alleged, that her attor-
neys at law who conducted the former suit without her knowledge
or consent and in violation of her special instructions settled the
case by a consent decree which was entered; that her attorneys
were expressly instructed that they might consent to a settlement
and decree whereby the plaintiff would bind herself to pay the
bank the sum of $5,000 in full settlement of all its demands against
her; that this was known to the bank, but through its attorneys,
and in collusion with the plaintiff's attorneys, it deliberately per-
petrated a fraud upon the plaintiff by consenting to a decree which
contained a judgment for $15,000 against her, in favor of the bank;
and that she was informed by her attorneys that the consent decree
had been taken in accordance with her instructions. By one of
the amendments it was alleged, that instructions of the character
above stated were communicated to one of her attorneys, named,
through her husband, on the morning of the day on which the con-
sent decree was entered; that such attorney communicated them
to another of her attorneys who was present; that a third attorney
of hers was not present, and took no part in the management of
the case; that she specially instructed her attorneys that she would
not consent to a compromise or settlement of the case except on
such terms, "and her said attorneys agreed that they would settle
in no other way;" and that, through her husband, she had on sev-
eral occasions just prior to the term of court fully apprised the
leading counsel for the bank of the terms on which she would be
willing to settle; but that such attorney fraudulently persuaded her
counsel to disregard her instructions, and induced them to con-
sent to a decree which was rendered, whereby she was required to
pay $15,000 to the bank instead of $5,000. A copy of the decree
was attached. It declared that the debt was that of the plaintiff,
and not of her husband, and that the title to the land was in the
bank. It fixed the amount of the indebtedness at $15,000, which
was not to be enforced against her personally, but against the
land; and provided in regard to a restoration of title to the plaintiff
upon payment of that amount in partial payments of $5,000 each,
for the passing of a certain part of the property to her upon pay-

ment of the first instalment, for allowing her to sell parts of the property at prices satisfactory to the bank, and credit the price on the debt, for making sale in case of non-payment of deferred payments, etc. On demurrer, the allegations of the plaintiff's petition on this subject must be treated as true. Of course we do not mean to express any opinion as to whether they can be sustained by evidence, or are in fact true, but we are dealing with the case on demurrer; and in so far as the equitable petition sought to set aside the consent decree, and to reinstate the parties in the situation which they occupied at the time of its rendition, it was not demurrable. The fact that the defendant had certain other attorneys than the leading attorney, who was charged with knowledge of the instructions given by the plaintiff to her counsel, would not affect the ruling above made.

It was contended that the plaintiff should be held to be bound by the agreement of her attorneys, and that she should be remitted to a suit against them for damages, if she were injured by their conduct. We have seen that the decisions have not held that the client was compelled to elect such a remedy, if there was a violation of instructions as to compromising, which was known to the adverse party. Unfortunately the members of the bar are not always opulent, and are sometimes even insolvent. Daniel Webster is said to have tersely described the career of a lawyer by the words "work hard, live well, and die poor." Leading and honored members of the profession not infrequently accumulate more learning than lucre. If it should be laid down as an absolute rule that a lawyer could in all cases bind his client by a compromise put into the form of a consent decree or judgment, regardless of instructions to the contrary, and regardless of knowledge thereof on the part of the adverse party, it will readily be seen that occasions might arise where a client's entire property involved in litigation might be agreed away, in spite of his protest, and he might be remitted to a suit by which nothing could be realized.

It was argued that the plaintiff had in the former case elected the remedy of suing the bank for double the usurious interest claimed to have been paid to it, and that she was bound by that election. But when the amendments to the former petition were withdrawn, and it was restored to its original condition, the election would seem to have been abrogated. Nor are we prepared to hold

summarily, on demurrer in this case, whether or not the consent decree gave to the plaintiff all, or more than all, that she could have recovered under the former suit, with its numerous allegations and prayers. If the consent decree should be set aside, neither party should be cut off, merely by reason of such decree, from prosecuting or defending the litigation.

3. The present petition contains a good many allegations rather loosely and vaguely pleaded, some of them asserting that the deed which the plaintiff made to the bank was void for usury; others that she made the deed in payment of a debt infected with usury,—in which case it would not be void. *Harris* v. *Hull*, 70 *Ga.* 831 (3). Other allegations indicated that the debt which the deed was made to pay was that of the plaintiff's husband, but still others were inconsistent with that theory. One paragraph of an amendment asserts that "she has made sufficient payments to the First National Bank of Blakely to entirely liquidate her own debt to said bank, and the deed to her land now held by said bank is a conveyance of her property to pay her husband's debts; and therefore said conveyances are null and void." It was then alleged that the bank was not an innocent purchaser, "but took such deeds to her land with full knowledge of the fact that they were made to pay her husband's debts." This again is inconsistent with other allegations of the petition and some of those contained in the former petition, which was attached thereto as an exhibit. Besides, it is uncertain as to when the payments were made; and this was attacked by demurrer. If the decree stands of force, none of the relief sought can be had. If it should be set aside, the original suit endeavored to include the substantial grounds of complaint sought to be set up in the present case, except certain allegations in regard to payments upon the decree and in regard to rents, issues, and profits. In view of this fact, and of the character of the allegations of the plaintiff's petition, and of the fact that nearly all of them were attacked by special demurrers, we think that the proper disposition to make of the case is to direct that all the allegations and prayers be stricken from the petition, except those in reference to the bringing of the former action, its termination in the consent decree, and the attack made upon such decree; that such striking shall not be an adjudication that the plaintiff has no cause of action or right of recovery in respect to these matters; but that the

present case stand as one to set aside the consent decree, and reinstate the former case as it was before such decree was rendered; and we direct that this be done accordingly.

*Judgment reversed, with direction. All the Justices concur.*

ATKINSON, J. I concur in the judgment, under the allegations made in the petition as amended, but not in all of the reasoning by which the result is reached.