EVANS *et al. v.* BROOKE *et al.*

No. 10752.   MARCH 20, 1936.

*William T. Townsend,* for plaintiffs in error.

*Henry L. Barnett, Joseph M. Lang, Roscoe Pickett,* and *H. G. Vandiviere,* contra.

RUSSELL, Chief Justice. We are of the opinion that the ruling in this case must be controlled by the decision in *Davis* v. *First National Bank of Blakely,* 139 *Ga.* 702 (78 S. E. 190, 46 L. R. A. (N. S.) 750), which case, as this court held, involved a very important question, to wit: the authority of an attorney at law to bind his client by a compromise resulting in a consent decree, in direct opposition to the instructions of his client, with the knowledge of leading counsel for the adverse side of such violation of the instructions. The petition in the *Davis* case made substantially the same allegations as contained in the petition now before us, and for the purposes of demurrer the demurrant must admit the facts alleged to be true. In respect to the case now sub judice we can not do better than use the language of this court as expressed by Mr.

Justice Lumpkin in the *Davis* case. "Mrs. M. C. Davis filed her petition against the First National Bank of Blakely, seeking to have a consent decree which had been previously rendered set aside, and to obtain other relief. Two amendments were made thereto. General and special demurrers were filed, and were sustained; and the plaintiff excepted. . . On behalf of the defendant reliance is placed upon Civil Code [1910] § 4955, which reads as follows: 'They [attorneys] have authority to bind their clients in any action or proceeding, by any agreement in relation to the cause, made in writing, and in signing judgments, entering appeals, and by an entry of such matters, when permissible, on the dockets of the court; but they can not take affidavits required of their clients, unless specially permitted by law.' This section has been in each code since the first, which is generally called the Code of 1863, because its operation was suspended from the time when it was first contemplated that it should take effect (January 1, 1862) until January 1, 1863. In the first code it appeared as section 382. It did not originate from a legislative enactment, but was a codification of the rule previously existing, and arising from the decisions of courts. In such a case it has been held that the decisions will be looked to in construing the section thus codified. *Bush & Hattaway* v. *McCarty Co.*, 127 *Ga.* 308, 310 (56 S. E. 430, 9 Ann. Cas. 240) ; *Calhoun* v. *Little*, 106 *Ga.* 336 (3), 343 (32 S. E. 86, 43 L. R. A. 630, 71 Am. St. R. 254) ; *Ocean Steamship Co.* v. *Way*, 90 *Ga.* 747 (17 S. E. 57, 20 L. R. A. 123). This section did not confer upon attorneys any new authority, but stated in a terse form the pre-existing general rule derived from the sources to which the codifiers were authorized to look. To take such a general rule and slavishly adhere to its letter, without looking to its spirit and meaning, would be substantially to violate the rule in endeavoring to adhere to it. It is a well-established maxim, qui hæret in litera hæret in cortice (liberally translated by Brougham, 'He who considers merely the letter of an instrument goes but skin-deep into its meaning'). Let us then look to the derivation of this rule, and to the decisions of this and other courts in regard to it." Mr. Justice Lumpkin then proceeds to cite, quote, and discuss rules prevailing in England and various other jurisdictions, but, expressing the conclusion of this court, says: "Under the English rule the authority of an attorney in regard to the litigation was analogized

to that of a general agent. But where that rule has been adopted, it has generally been declared that an attorney at law can not make a compromise of a litigation, and consent to a judgment or decree to carry it into effect, against the express instructions of his client, when such instructions are known to the other party. Thus, in Wharton on Agency, after the author has advocated the English rule, he says (§ 594) : 'If the opposite party knows that the attorney is without authority or acts in disobedience to his client, the compromise will not be enforced to the injury of the client.' Beliveau v. Amoskeag Manufacturing Co., 68 N. H. 225 (40 Atl. 734, 44 L. R. A. 167, 73 Am. St. R. 577) ; Weeks on Attorneys, § 228; Brady v. Curran, 2 I. C. L. 314; Strauss v. Francis, L. R. 1 Q. B. 379. . .

"Section 4955 of the Civil Code does not mean that when a client employs an attorney to bring or defend a suit, it ceases to be the client's litigation, that he has no power to say whether he will litigate or compromise his suit, and that the attorney becomes the owner or absolute master of the litigation, so as to be able to sell or give away his client's property rights by contract, in spite of his client. This is a very different thing from the management of the litigation and agreements connected therewith, such as agreeing to a reference of the case to an auditor or a submission of it to arbitration, to allow copies of papers to be used in evidence, to waive notices, and the like. Neither does the statutory lien which an attorney has upon a suit, which ordinarily prevents his client from settling or dismissing the case so as to defeat him of his fee, have the effect to entirely oust the client from the case.

"It was contended that fraud, in order to set aside a judgment, must be fraud on the part of the adverse party or his attorney; and expressions of this sort have been used in some of the decisions. But they were cases where the magistrate forgot to notify a litigant of the time when a case would be heard, as he had agreed to do, or where the fraud alleged was that of some third party. In none of them was a violation of duty by an attorney, with knowledge of the adverse party, involved. If one knowingly obtains from an attorney at law or agent, by agreement, a surrender of the property rights claimed by his client or principal, in spite of instructions to the contrary, what name shall be given to the conduct of the party inducing the agent or attorney to violate his duty? In Holker v.

Parker, 7 Cranch, 436 (2 Curt. 606, 3 L. ed. 396), the ruling actually made was that an attorney at law, merely as such, has no right, strictly speaking, to make a compromise for his client. In the opinion Chief Justice Marshall makes this pointed statement: 'Though it may assume the form of an award, or of a judgment at law, the injured party, if his own conduct has been perfectly blameless, ought to be relieved against it. This opinion is the more reasonable, because it is scarcely possible that in such a case the opposite party can be ignorant of the unfair advantage he is gaining. His conduct can seldom fail to be tainted with some disingenuous practice; or, if it has not, he knows that he is accepting a surrender of the rights of another, from a man who is not authorized to make it.' If an attorney, under his general implied powers, has authority to compromise a case with one who is not aware of any express limitation on such authority, still this language is applicable if the adverse party knows of· the violation of instructions by the attorney in making the compromise."

In the present case, as in the *Davis* case, it is possible that some amendment to the petition may be required (which can be done after the case is reinstated), but we accord with what is said upon this subject in the *Davis* case. It is accordingly ordered, as was done in the *Davis* case, that all allegations and prayers of the petition which the court dismissed on demurrer "be stricken from the petition, except those in reference to the bringing of the former action, its termination in the consent decree, and the attack upon such decree; that such striking shall not be an adjudication that the plaintiff has no cause of action or right of recovery in respect to these matters; but that the present case stand as one to set aside the consent decree, and reinstate the former case as it was before the decree was rendered."

*Judgment reversed, with direction. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*

BELL and HUTCHESON, JJ., concur in the result.

GILBERT, Justice, dissenting. As I view the record, the judgment of the trial judge should be affirmed. Although the judgment leads to results which could not have been reached except by agreement, the undisputed fact is that all the parties did agree to the verdict and judgment, the minors through their next friend. The motion to set aside, when reduced to its essence, is that the agreed

verdict and judgment should be set aside because the petitioners did not consent thereto. The petitioners were minors who appeared in court through their next friend, an adult sister. The agreed verdict and judgment reached, in a substantial part, the very result which they sought in the suit instituted by them. The outstanding deeds were canceled. They proceeded through their next friend for the very reason that minors are not, as a general rule, bound by their own agreements. When their next friend, through her counsel, agreed to the verdict and judgment, that, as a matter of law, amounted to an agreement by the minors. In *Gentle* v. *Georgia Power Co.*, 179 *Ga.* 853, 854 (177 S. E. 690), it was said: "An infant is bound by a judgment entered in a case brought by him through a next friend, as though he were an adult; this in the absence of gross laches or fraud or collusion. Kansas City &c. R. Co. v. Morgan, 76 Fed. 429 (21 C. C. A. 468) ; *Colson* v. *Tooke,* 18 *Ga.* 742; *Evans* v. *Collier,* supra; *Reeves* v. *Lancaster,* 147 *Ga.* 675 (95 S. E. 246) ; *Dampier* v. *McCall,* 78 *Ga.* 607 (3 S. E. 563)." There being no sufficient allegation of fraud on the part of the next friend, the minors are bound by her agreement. It may be that the property set apart as a year's support could not be made liable for the funeral expenses of the mother, as a matter of law; but certainly the children have the power to agree that such funeral expenses should be paid out of the year's support. Partition could not have been had without agreement, but they did pray for a decree declaring title in them "in accordance and proportion with the allegation of the petition as to their ownership thereof." When that was accomplished, partition could legally follow, even if not provided for in the judgment.