72183. VANDIVER et al. v. McFARLAND.
(346 SE2d 854)

BIRDSONG, Presiding Judge.

The defendant McFarland in this personal injury case filed a "Motion to Enforce Settlement Agreement and for Order of Judgment Thereon." Plaintiffs' attorneys filed a cross-motion in support of McFarland's motion, with affidavits averring that a binding settlement agreement was entered into. Plaintiffs hired a new attorney. The trial court granted McFarland's motion. On appeal, the plaintiffs contend the trial court erred in denying their objections and motions to strike the attorneys' affidavits for insufficiency, and erred in enforcing the settlement.

The plaintiffs' erstwhile attorney, Brown, swears by affidavit that he entered into the agreement with McFarland's attorney, and that he had "express authorization from the plaintiff, Alan Dean Vandiver," to settle as he did. Brown's partner, D'Orazio, swore by affidavit that "[o]ur firm had and I exercised express authority . . . to enter into the settlement agreement."

In response, Alan Vandiver asserts by affidavit that he discussed a settlement but he did not authorize his attorneys to settle all claims; and that he "never [agreed] to settle [his] claim," and informed his attorneys he would not settle, on the terms proposed. Elaine Vandiver averred she had no knowledge of the purported settlement, was not asked for and gave no consent and did not authorize the attorneys to settle her claims.

The attorney fee agreement provided: "*[N]o settlement . . . may be made without the consent of the undersigned [plaintiffs].*" (Emphasis supplied.)

The trial court found "that a [definite and certain] verbal settlement agreement was reached between counsel for the defendant and the [plaintiff's attorneys]"; and further "that the [attorneys] had apparent authority by law to enter on behalf of the plaintiffs such settlement agreement. . . ." *Held:*

The Supreme Court held in *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674-675 (308 SE2d 544): "Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. [Cits.] This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. [Cits.] The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. [Cits.] Therefore, from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority. . . ."

Accordingly, we must hold the trial court correctly granted judgment enforcing this settlement. Further, since under *Brumbelow* it is immaterial whether the attorney had authority to settle, any insufficiencies in the affidavits as to authority, are immaterial.

*Brumbelow* holds an attorney has plenary authority in fact to dispose of his client's claim or defense without authority. The Supreme Court explains that the client's remedy for unauthorized settlement is not to forbid such settlement in the first place, but to force the client to sue his own lawyer after the fact, under DR 7-102 (A) (9) of the Rules and Regulations of the State Bar of Georgia: "In his representation of a client, a lawyer shall not . . . institute, cause to be instituted or settle a legal proceeding or claim without obtaining proper authorization from his client." But it seems to us this State Bar Rule means attorneys have no such *apparent* authority and have no right to presume others do.

The remedy proposed by the Supreme Court is an empty one: if after much trouble, litigation and expense the client succeeds in convincing a court or jury, over the attorney's word, that the settlement was unauthorized *and* that the claim or defense thus disposed of was valuable, what if the attorney cannot pay?

In our experience, attorneys expect that an agreement by counsel to settle depends on the client's approval, and offers and acceptances are generally made on that basis. By holding otherwise, the *Brumbelow* rule propagates litigation. It puts the burden on clients to prove that their attorney breached his trust; and not least, it sacrifices the delicate relation of trust between client and lawyer — all merely to give the opponent a bonus in the form of settlement he had no right to expect in the first place.

Considering what is lost here, what is the monumental burden in simply requiring attorneys to obtain special authority before settling

a case?

The main cases relied upon by *Brumbelow* for its rule of "apparent authority," actually involved the special equity of detrimental reliance by the other party. *General Communications Svc. v. Ga. Public Svc. Comm.*, 244 Ga. 855 (262 SE2d 96); *Stone Mountain &c. Assn. v. Smith*, 170 Ga. 515 (153 SE 209). Other cited authorities were *Glazer v. J. C. Bradford & Co.*, 616 F2d 167, where the party asked his lawyer to settle and placed no limitations on his authority, and *Davis v. Davis*, 245 Ga. 233 (264 SE2d 177). In *Glazer*, the federal court also relied upon *Davis v. Davis*, supra, which relied upon *Shepherd v. Carlton's Nice Cars*, 149 Ga. App. 749 (256 SE2d 113). *Shepherd* based its broad "apparent authority" statement upon *Dean v. Jackson*, 219 Ga. 552 (134 SE2d 601), which really involved only a stipulation as to the "management and direction of the client's case" authorized by OCGA § 15-19-5. (See *Davis v. First Nat. Bank*, 139 Ga. 702, 706, 710 (78 SE 190): The statute concerning attorney's authority to bind client, OCGA § 15-19-5, historically refers to the "conduct and management of the case" and does not imply authority to dispose of a claim or defense in spite of client's instructions.) Further, the cases cited for *Brumbelow*'s holding that the attorney's authority is plenary unless any restrictions are communicated to the opposing party, involved agreements that had *gone to judgment* which could be set aside only for fraud of the opponent. *Reece v. McCormack*, 188 Ga. 665 (4 SE2d 575); *Elliott v. Elliott*, 184 Ga. 417 (191 SE 465). But see *Davis v. First Nat. Bank*, supra, pp. 710-711; 7A CJS 214, p. 370; 7 AmJur2d, § 158.

It may be true that an agent can bind his principal if a third party is unaware of limitations on his authority, but only if some fact appears which would justify the third party in assuming the agent had such authority in the first place. See *Shivers v. Barton & Ludwig*, 164 Ga. App. 490, 491 (296 SE2d 749); *Commercial Auto Loan Corp. v. Baker*, 73 Ga. App. 534, 535 (37 SE2d 636); 1 EGL 469, 519, Agency, §§ 33, 119 (1977 rev.). The mere act of hiring an attorney does not imply to anyone that the attorney has authority to dispose of his client's claim or defense. If the public were told that it did and *that the attorney they hire can therefore dispose of their claims and defenses at will*, they would recoil in horror and deny it. *Brumbelow* further holds that even if the client *expressly tells the attorney not to settle without authority*, he can do it because the opposing party thinks he can.

"The . . . almost universal [rule is] that an attorney who is clothed with no other authority than that arising from his employment in that capacity has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action." 30 ALR2d 944, 945. In 7 AmJur2d, § 156, it is said: "An attor-

ney, merely by virtue of his general retainer, has no implied power to compromise and settle his client's claim. . . . [S]pecial authorization or subsequent ratification by the client is essential before a compromise or settlement by the attorney will be binding on the client."

In 7A CJS, § 214, it is said: "[T]he general rule [is] that an attorney cannot bind his client by contract or a compromise or settlement without express authority. . . . Where . . . there has been nothing beyond a mere employment or retainer of the attorney to represent the client in a cause and the attorney has thereby acquired no apparent authority to make a compromise or settlement . . . it is incumbent upon the opposing party to ascertain at his peril whether actual authority to take such action has been conferred upon the attorney. Accordingly, if the client has not held his attorney out to the opposing party as having any other or greater power than an attorney . . . commonly has, such other party is charged with knowledge that agreements of compromise or settlement do not come within the implied authority of the attorney. . . ."

The plaintiffs in this case gave express instructions in writing to their attorneys that no settlement of their claims could be made without their consent. We are, however, required by *Brumbelow* to affirm the grant of summary judgment to the defendant based on plaintiffs' own attorneys' sworn affidavit that they disposed of their clients' claims.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

### On Motion for Rehearing.

Appellants propose a difference in fact between this case and *Brumbelow*, supra, to wit: in *Brumbelow* the plaintiff apparently placed no express restrictions upon his attorney's authority to settle. But the holding in *Brumbelow*, though it exceeds its facts, clearly states that a settlement by an attorney is enforceable, and his authority is plenary, *"unless it is limited by the client* and that *limitation is communicated* to opposing parties. . . . Therefore . . . in the absence of knowledge [by opposing party] of express restrictions . . . the client will be bound by the acts of his attorney within the scope of his apparent authority. . . ."

We note further that none of the authorities we cited, *nor any we found*, allowed that *if there were no express restrictions* the attorney had authority to settle. To the contrary, they all show it is unnecessary and redundant to require a client to place express restrictions on the attorney's authority because mere retention of an attorney does not give him authority to compromise and that is why he does not have "apparent" authority. As we indicated in our opinion, as a matter of fact the public would "recoil in horror and deny it" if they were

told their attorney could dispose of their case because they never told him not to.

*Motion for rehearing denied.*

DECIDED JUNE 6, 1986 —
REHEARING DENIED JUNE 19, 1986 —

*Darryl R. Vandeford*, for appellants.
*E. Wycliffe Orr, Ellis Ray Brown, John S. D'Orazio*, for appellee.