A91A2042. LEWIS v. USELTON et al.
(416 SE2d 94)

BIRDSONG, Presiding Judge.

We granted this appeal of the denial of summary judgment to James W. Lewis in his suit against Peggy J. Uselton and Lloyd W. Uselton for $9,000 attorney fees based on a 40 percent contingent fee agreement, to which the Useltons counterclaimed alleging professional malpractice of attorney Lewis.

The employment contract executed by the Useltons provides: "[Clients agree] that the said James W. Lewis shall have full power and authority to settle, compromise or take such action as he might deem proper. . . ." Lewis contends this provision gave him *absolute* power and authority, in his sole discretion, to settle the Useltons' claims arising from Mrs. Uselton's injuries in an auto collision. The Useltons contend Mrs. Uselton told appellant that because she had

incurred approximately $30,000 in medical expenses and $7,000 in lost wages, she wanted a jury trial if the personal injury defendant DeKalb County would not settle for its insurance policy limits, $50,000. Lewis settled his clients' claims for $22,500; they repudiated the settlement and discharged Lewis. It is undisputed that Lewis did not seek or obtain authorization from the Useltons for this specific settlement amount.

At the motion to enforce the settlement, Lewis asserted: "I would not have accepted the case . . . unless I had full authority to settle the case . . . and by the way . . . I'm a partner, forty percent, if I thought there was a good chance of getting more, I certainly would not have settled for $22,500." The settlement was enforced pursuant to *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) without, apparently, considering the obvious parameters noted in *King v. King*, 199 Ga. App. 496, 499 (4) (405 SE2d 319) as held in *Petty v. Complete Auto Transit*, 215 Ga. 66, 67 (1) (108 SE2d 697).

In affidavit to his motion for summary judgment, appellant averred: "At no time have I ever stated to [Mr. and Mrs.] Uselton, or to anyone else, that [they] would have any authority over settlement of [their] legal action." On appeal he asserts again, "Remember, I was a 40 percent partner with the Useltons in the case." *Held*:

1. In *Rogers v. Pettigrew*, 138 Ga. 528, 529-530 (75 SE 631), an attorney made an unauthorized settlement at trial. In the attorney's suit for fees, the jury found for the attorney, but the Supreme Court said: "A litigant has the right to insist that his case be adjudicated according to the established rules of law and procedure. When he instructs his attorney not to compromise his case, the attorney is bound by such instructions, and is not at liberty to violate them. . . . If he violates his instruction in this respect, he forfeits all right to compensation. . . . '[W]here an agent or attorney is unfaithful to his trust, or violates his instructions, he is not entitled to any compensation.' [Cit.] The attorney's . . . zeal and desire to recover something for his client is no excuse for violating her positive instructions."

The question now is whether appellant's settlement was authorized so as to relieve him of liability to his clients and allow him to collect his fee. Lewis claims his employment contract gave him the "specific" or "special" authority to settle in his discretion. See *Equitable Gen. Ins. Co. v. Johnson*, 166 Ga. App. 215 (303 SE2d 757).

In *Patterson v. Southern R. Co.*, 41 Ga. App. 94 (151 SE 818), a compromise was enforced on proof of a long course of dealing in which a party held out his attorney as having authority to compromise his claim, so that the attorney had "apparent" authority *based on the acts of the principal towards the third party* — which is the true source of "apparent authority" in agency law. See *Vandiver v. McFarland*, 179 Ga. App. 411 (346 SE2d 854). Unless the client held

out the attorney as having such authority, the rule in Georgia prior to *Brumbelow*, supra, was that "in default of any proof going to show that the settlement was authorized by the attorney's client, it would not be binding." *Burnett v. Johnston*, 45 Ga. App. 667-668 (165 SE 857). *Evans v. Atlantic Nat. Bank*, 147 Ga. 621 (95 SE 219); *Kaiser &c. v. Hancock*, 106 Ga. 217 (32 SE 123); *Patterson*, supra; *Johnston v. Starr Piano Co.*, 27 Ga. App. 425 (108 SE 811).

An attorney is "expressly forbidden by law from receiving anything in discharge of a client's claim but the full amount in cash"; therefore, prior to *Brumbelow*, an attorney who settled with another attorney for a sum less than was due, was required at his peril, to ascertain that the attorney was authorized to make such a compromise. *Sonnebom & Co. v. Moore Bros.*, 105 Ga. 497 (1) (30 SE 947). And, "no presumption of . . . authority [arose] from mere acceptance by the plaintiff's attorney in a pending suit of a sum less than the amount sued for." *Burnett*, supra at 667 (1). That an attorney accepted a sum less than the amount of the claim, "raised no presumption, in favor of the [opponent], that the attorney had special authority from his clients to do so"; *Sonnebom & Co.*, supra; *Kaiser &c.*, supra at 219. "[P]roof by the defendant . . . that he has paid to the attorney of record for the plaintiff a sum less than the amount sued for, as a full settlement . . . raises no presumption that the attorney was authorized by the plaintiff to make such a settlement. Consequently, under such circumstances, *the burden is upon the defendant to show the authority of the plaintiff's attorney to make the settlement which he sets up as a satisfaction of the plaintiff's claim.*" (Emphasis supplied.) Id. at 217.

Under the law prior to *Brumbelow*, attorneys could generally be assured that a compromise by opposing counsel was in fact authorized, not because there was "apparent authority" of an attorney to compromise his client's claim, defense or property rights, but *because there was not*. Since unauthorized settlements generally were unenforceable, generally only authorized settlements were made.

It is significant that when the law was as stated in *Evans*, supra; *Kaiser*, supra; *Sonnebom & Co.*, supra; *Burnett*, supra; *Patterson*, supra; *Johnston*, supra; and see *Equitable Gen. Ins. Co.*, supra at 218 (2), there was almost never a necessity to cite those cases. Unless an innocent party suffered actual detriment in reliance on an unauthorized settlement (see *General Communications Svc. v. Ga. PSC*, 244 Ga. 855, 856 (262 SE2d 96)), there was no reason to reward him a bonus to the detriment of another innocent party. See *Vandiver*, supra at 412. An attorney who relied on a settlement without ascertaining its authority did so "at his peril" (*Sonnebom & Co.*, supra), for if the settlement was unauthorized, the attorney who relied on it was *in fact* as mistaken as the attorney who made it, and could not by

reason of his mistake create rights for his client against an innocent opposing party.

Every attorney in this state knows that "[w]ithout special authority, attorneys cannot receive anything in discharge of a client's claim but the full amount in cash." OCGA § 15-19-6. According to *Brumbelow*, supra at 674, fn. 1, this statute, is irrelevant to the question whether an attorney may assume other counsel has authority to settle. But since the statute governs attorney/client relations (id.), it is difficult to see why an attorney should assume opposing counsel has a right *which he himself does not lawfully and ethically have.* (*Brumbelow* states also that OCGA § 15-19-6 applies only where the claim is for a "sum certain," but we find no prior authority for that statement (compare *Kaiser &c.*, supra), and an attorney is not justified in assuming a proprietary interest in a claim on grounds it is uncertain.) Finally, State Bar DR 7-102 (A) (9) provides: "[A] lawyer shall not . . . settle a legal proceeding or claim *without obtaining proper authorization* from his client." (Emphasis supplied.) "Proper authorization" is *"special authority"* (OCGA § 15-19-6); that is, for the specific settlement proposed. *Equitable Gen. Ins. Co.*, supra.

So, although *Brumbelow* held an attorney's authority to settle "may be considered to be plenary" (at 675), it did not hold the attorney has such authority in fact, for he does *not* have such authority. OCGA § 15-19-6; DR 7-102 (A) (9); see *Vandiver*, supra at 413-414; 7A CJS, § 124; 30 ALR2d 944, 945; 7 AmJur2d, § 156. Routine enforcement of unauthorized settlements significantly alters the legal and property rights of clients; it is thus essential in these cases that *Brumbelow* be strictly construed and we do not think the Supreme Court intended otherwise. An unauthorized settlement which caused the relying party no loss of legal right (see *General Comm. Svc.*, supra) should be enforced only where the complete absence of bad faith or actual or constructive fraud is affirmatively shown. *Brumbelow* does not authorize enforcement of an unauthorized settlement where "the attorney's action is in violation of express directions of the client which are known by the other party or his attorney, or is fraudulent or collusive." *King*, supra; *Petty*, supra. If an unauthorized settlement is enforceable where the other attorney "lacks such knowledge [that it violates express direction of the client]," (*King*, supra), nevertheless nothing in *Brumbelow*, strictly construed, authorizes compromise where the other party or attorney knew or should have known of the lack of authority to enter a compromise in the case.

We conclude that *Brumbelow* does not in any way enlarge the rights, powers and authority of attorneys, and that an attorney may not settle or compromise his client's claim, defense or property without *obtaining* "special authority," that is, without consulting the client as to a specific offer of settlement when it is made. The fact that

in theory a client has a remedy against his attorney does not mitigate the harm caused by unauthorized settlements, for aside from creating adversarial relations between attorney and client, this remedy is uncertain. It is suggested that enforcement of unauthorized settlements promotes certainty in legal dealings, but it has the opposite effect, by guaranteeing excess litigation, and by removing even the illusion of fidelity which is the Bar's stock in trade. In view of the burdens imposed on the public by the exercise of such unbridled power by attorneys, we think public policy must give this solitary remedy every consideration available.

Prior to *Brumbelow*, when an attorney asserted reliance on another's "apparent" authority, he did so at peril; there was no presumption of such authority and the burden of proof was on the attorney seeking to enforce a settlement. *Kaiser &c.*, supra; *Johnson v. Starr Piano Co.*, supra. The same reasoning applies today where an attorney asserts such authority *as against his own client*. Although *Brumbelow* allows opposing counsel to rely on an "apparent" plenary authority to settle, it does not create a presumption *as against the client* that any such authority existed. Therefore, the burden is on the attorney who asserts this right against his client to prove it unequivocally. See OCGA § 24-4-1; and see, as to affirmative defenses, *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 679 (278 SE2d 100).

2. We find this attorney/client contract contains no language giving the attorney greater authority than he would otherwise have. It gives the attorney no "right" to do anything the clients did not authorize him to do; it gives full *"power and authority* to settle, compromise or take such action as he might deem proper," which is no more than the common authority attorneys have to implement settlements determined by the client and do all things proper to carry them into effect. See *Vandiver*, supra. Appellees plainly instructed their attorney that they would settle for no less than $50,000; thus, he had "full" authority to enter a settlement for the amount of $50,000. This "full power and authority" to settle accrued *only* after the amount of the settlement had been approved by the client, as required by law at OCGA § 15-19-6. To hold otherwise would deprive a party of the right to decide the amount of settlement and would deprive him of his property at his own lawyer's doorstep. In appellant's own view, the authority to settle for $22,500 would allow him to settle for $2, or to refuse to settle. Such broad power is uncertain and proprietary by nature and cannot be described as "special" authority.

3. Further, in his attempt to construe this language to give himself absolute authority to settle in his discretion, appellant contends "it would be difficult to draft language any more clear in its intent, or any more easily understood." Obviously this is not true.

An ambiguous provision in a contract is construed most strongly

against its maker. *Hunsinger v. Lockheed Corp.*, 192 Ga. App. 781, 784 (386 SE2d 537). The provision in this contract must be construed most strongly against the attorney who proposed it; moreover, " '(a) contract will not be construed so as to authorize one of the parties to take advantage of his own wrong.' " *Norton v. Hutton*, 172 Ga. App. 836, 837 (324 SE2d 744); *Hunsinger*, supra. Absent an express, clear and unmistakable voluntary relinquishment by the client of his legal and property rights with full knowledge of what rights he has relinquished, an attorney/client contract cannot be interpreted to give an attorney a proprietorship or an authority which the law or legal ethics forbid him to have. In ordinary cases of legal malpractice, "where the document requires substantive or procedural knowledge, is ambiguous, or is of uncertain application, the attorney may well be liable for negligence, notwithstanding the fact that his client read what was drafted" (*Berman v. Rubin*, 138 Ga. App. 849, 854 (227 SE2d 802)), the more so where the client was incorrectly advised as to the provision's legal meaning and effect (*Kushner v. McLarty*, 165 Ga. App. 400, 403 (300 SE2d 531)), and even more so where the attorney thereby induces the client to employ him.

Construing this contract most strongly against appellant, it clearly does not give him the power and authority he asserts.

4. As to the use of the word "specific" in these cases, OCGA § 15-19-6 requires a finding of "special" authority. See *Equitable Gen. Ins. Co.*, supra at 219-220. "Special authority" is authority other and greater than an attorney commonly has by virtue of the general retainer (see *Vandiver*, supra at 414) and refers to the client's "special" approval of the "specific" terms and amount proposed. The attorney can *obtain* "special authority" only when and as a settlement is proposed. Nothing in *Equitable Gen. Ins. Co.* implies otherwise, for we said: "[I]t is the common practice that attorneys entertain settlements subject to the client's approval." Id. at 219-220. "Considering what is lost here, what is the monumental burden in simply requiring attorneys to obtain special authority before settling a case?" *Vandiver*, supra at 412-413. Special authority as to the specific terms of a particular settlement is the "proper authorization" which DR 7-102 (A) (9) provides the attorney must "obtain" before he settles a legal claim.

5. Grave considerations are posed by the attorney's assertion that he "was a forty percent partner" with the Useltons. This, he says, gave him "absolute" authority and discretion to dispose of their claims. He asserts also that at no time did he ever state to them that they would have any authority over settlement. He asserts, moreover, that he had the right to decide the matter of settlement because a contingent fee contract creates in the attorney an interest in the subject matter and is not revocable at will, citing *Wheeler v. Pan-Ameri-*

can Petro. Corp., 48 Ga. App. 378 (172 SE 826). But that case has nothing to do with an attorney's contingent fee contract and even less to do with lawyer's ethics.

We conclude that the attorney's assertion of proprietary rights in the clients' claims is inimical to the law and is strictly forbidden by the Ethical Regulations of the State Bar Standard 31 and DR 5-103 (A) (2). The provision allowing a contingent fee is designed to give access to the judicial system to financially disadvantaged parties. If it is used as a basis to remove or diminish their legal or property rights, it becomes so perilous for them to seek legal counsel that any benefit bestowed by the allowance of a contingent fee is removed. An attorney's right to receive a contingent fee does not make the attorney a "partner" with his client for any purpose.

Appellant is not entitled to summary judgment on his claim for attorney fees or on the counterclaims for malpractice.

*Judgment affirmed. Pope and Cooper, JJ., concur.*

## ON MOTION FOR RECONSIDERATION.

Appellant contends that if an attorney can obtain "special authority" only when and as a specific settlement is proposed, this means a client cannot, in a contract of employment, give the attorney authority to dispose of his claim at the attorney's discretion.

The statutory and disciplinary proscriptions against an attorney's disposition of a client's legal and property rights without "obtaining" "special" authorization (DR 7-102 (A) (9); OCGA § 15-19-6) are not ones we created. As to whether an attorney can ever construct an employment contract in which he may lawfully annex such rights, we leave this question to the Bar and to the individual case; but this contract was not such. Appellant contends this case has nothing to do with *Brumbelow*, supra, because this settlement was not "unauthorized" but was authorized by the contract he drafted. The transcript of the hearing on motion to enforce shows the settlement was enforced expressly pursuant to *Brumbelow* and over the Useltons' objections. Since their attorney concurred in the motion against them, the Useltons were powerless to prevent the disposition of their legal and property rights. The personal injury case in which they claimed $37,000 in actual loss was terminated by their attorney against their wishes, and now they are forced into another lawsuit, in which the attorney who disposed of their claims against their wishes will force them to prove their claims anyway in order to recover for their loss and prevent him from collecting a fee. This is a new species of potentially endless litigation spawned directly from the unauthorized disposition of clients' legal and property rights. In this case is added the conundrum that the attorney, in effect, says his clients gave him au-

thority to settle their claims against their wishes. This whole problem need never have arisen. Disputes with fickle clients, motions to enforce unauthorized settlements, misunderstandings with clients or with opposing attorneys, fee disputes and malpractice suits are all avoided by the attorney's *obtaining special authority* for a specific settlement when it is made. These are not new observations (see *Vandiver v. McFarland*, 179 Ga. App. 411 (346 SE2d 854); and see *Equitable Gen. Ins. Co. v. Johnson*, 166 Ga. App. 215 (303 SE2d 757), nor are they personalized to this appellant, for unfortunately this extra litigation is all too common today.

*Motion for reconsideration denied.*

DECIDED JANUARY 30, 1992 —
RECONSIDERATION DENIED FEBRUARY 18, 1992 — 

*James W. Lewis*, pro se.
*Hughes & Gibson, Ralph E. Hughes*, for appellees.