## A93A1423. LORD v. MONEY MASTERS, INC.
(435 SE2d 247)

BIRDSONG, Presiding Judge.

Plaintiff Richard S. Lord filed a defamation suit alleging that agents of Money Masters, Inc. intentionally made false statements to others that Lord embezzled money, and caused Lord to be arrested for theft. According to Money Masters, Lord embezzled $125,000 in money orders after Lord bought appellee Money Masters' check-cashing business. The money was to be refunded by appellee to third parties who had issued the money orders. According to appellee, when Lord refused to return the money, appellee had Lord arrested for theft.

Appellee moved for summary judgment based on Lord's attorney's agreement to a settlement by which Lord would release all claims against appellee and repay the money, and appellee would drop the criminal charges. However, the day after this settlement was allegedly agreed to, Lord's attorney told appellee's attorney that she had made a mistake and that Lord would not release all his claims. Lord did not execute the general release. He executed a release only of his claims arising out of the arrest. Lord's attorney sent this release and the money to appellee's attorney and asked appellee to forward

the money to the issuers of the money orders. Appellee did so, which relieved its own liability, and asked the district attorney to drop the criminal prosecutions.

The trial court granted summary judgment to appellee, finding that while there was a dispute whether the attorneys ever agreed to the specific terms of appellee's general release, it is undisputed that on appellee's receipt of the limited release executed by Lord and the money, "and in reliance thereon," appellee undertook all actions which it had agreed to undertake. The trial court granted summary judgment to Money Masters as to all claims. Lord appeals. *Held:*

Money Masters contends Lord's attorney's initial agreement to its settlement is binding on Lord under *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544). However, *Brumbelow* is to be narrowly construed and we are not authorized to extend its holding out of context of its facts. *Addley v. Beizer*, 205 Ga. App. 714, 720 (423 SE2d 398), cert. denied. See, e.g., *Bridges v. Bridges*, 256 Ga. 348, 350 (349 SE2d 172).

Although *Brumbelow* at 675 held the attorney's authority "may be considered" plenary, it did not say an attorney has absolute authority in fact, for he does not have such authority. *Lewis v. Uselton*, 202 Ga. App. 875, 879 (416 SE2d 94), cert. denied. The law is: "Without special authority, attorneys cannot receive anything in discharge of a client's claim but the full amount in cash." OCGA § 15-19-6. State Bar DR 7-102 (A) (9) provides: "[A] lawyer shall not . . . settle a legal proceeding or claim without obtaining proper authorization from his client." "Special authority" means something more specific than the general authority which attorneys have. *Vandiver v. McFarland*, 179 Ga. App. 411, 413-414 (346 SE2d 854), cert. denied. An attorney can generally "obtain" "special authority" only when a specific settlement is proposed (*Lewis* at 880), or where he had prior authority to settle within certain limits.

Attorneys cannot legally or ethically compromise his client's claims or rights without "obtaining" (DR 7-102 (A) (9)) "special authority" (§ 15-19-6) for the settlement proposed. An attorney may not assume opposing counsel has a right which he knows he himself does not have. See *Lewis* at 878. *Brumbelow* is strictly construed because enforcement of unauthorized settlements significantly alters the legal and property rights of clients, promotes uncertainty in legal dealings, propagates litigation, and removes even the illusion of fidelity which is the bar's stock in trade. Id. at 879. It puts the burden on the client to prove his attorney breached his trust and sacrifices the delicate relation of trust between client and lawyer, merely to give the opponent a bonus in the form of a settlement he had no right to expect in the first place. *Vandiver* at 412.

When a client employs an attorney, he does not lose his power to

say whether he will compromise, and the attorney does not become owner of the litigation so as to be able to sell or give away his client's rights. *Evans v. Brooke*, 182 Ga. 197, 207 (184 SE 800); *Addley* at 719-720. If unauthorized settlements are routinely enforced, "occasions might arise where a client's entire property . . . might be agreed away, in spite of his protest, and he might be remitted to a suit [against his own attorney] by which nothing could be realized." *Davis v. First Nat. Bank of Blakely*, 139 Ga. 702, 713 (78 SE 190). An assumption that unauthorized settlements can be enforced is an assumption that unauthorized settlements may be made. The only safeguard to an unauthorized disposition of a client's claim or defense is to make it generally unenforceable, for if it cannot be enforced there is no point in making an unauthorized settlement or in relying on one. *Lewis* at 877. There is nothing onerous in making a settlement subject to the client's approval, or in ascertaining the party's actual agreement to a specific compromise before relying on it. See *Addley* at 722. Attorneys should expect that an agreement to settle depends on the client's approval, and offers and acceptances are generally made on that basis. See *Vandiver* at 412. This is nothing new.

Under OCGA § 15-19-6 and DR 7-102 (A) (9), Lord's attorney had no right to compromise his claims without obtaining special authority. Appellee's attorney should have known this for he had no such right himself. Unless an innocent party suffers actual detriment in *justifiable* reliance on a settlement, there is no reason to give him a bonus to the detriment of another innocent party. *Lewis* at 877; see *Gen. Communications Svc. v. Ga. Pub. Svc. Comm.*, 244 Ga. 855, 856 (262 SE2d 96). See *Hynko v. Hilton*, 198 Ga. App. 308, 310 (401 SE2d 324).

Lord's attorney advised appellee's attorney as soon as she learned she had made a mistake. She forwarded the full disputed moneys to appellee's attorney, with the release actually executed by Lord. A jury might find appellee's attorney's acceptance of the money and his action to drop criminal charges were done in reliance on the limited release which Lord executed; this alone prevents summary judgment. Moreover, although appellee contends it did these acts in reliance on the original settlement, such reliance was not innocent or justified, for it was made after appellee's attorney knew that agreement was unauthorized and unapproved, so he did not deal with Lord's agent on the assumption that it was authorized. *Addley* at 720. Nor did appellee's attorney ascertain Lord's attorney's authority by asking Lord to execute the settlement. Id.

The judgment of the trial court is reversed.

*Judgment reversed. Pope, C. J., and Andrews, J., concur.*

DECIDED AUGUST 4, 1993.

*Laura J. Burton*, for appellant.
*Campbell & Dreger, Richard J. Dreger*, for appellee.