STATE, Plaintiff, vs. McCARTHY, Defendant.

*June 10—July 12, 1949.*

236

*Harlan B. Rogers,* special counsel for the Board of State Bar Commissioners, for the plaintiff.

For the defendant there was a brief by *P. J. E. Wood* of Janesville, attorney, and *Zabel, Wolf & Zabel* of Milwaukee of counsel, and oral argument by *Mr. Adam E. Wolf, Mr. John W. Zabel,* and *Mr. Wood.*

PER CURIAM. The questions involved may be stated as follows:

(1) Did the defendant violate his oath of office by becoming a candidate for the office of United States senator while holding the office of circuit judge of the Tenth judicial circuit?

(2) Did the defendant violate a standard of conduct established for judicial officers by running for the office of United States senator while occupying the office of circuit judge of the Tenth judicial circuit of the state of Wisconsin?

(3) Did the defendant's actions evince such moral turpitude as to warrant his suspension or disbarment as an attorney at law?

The applicable provisions of the constitution of the state of Wisconsin and of the Wisconsin statutes are set out in the margin.[1]

---

[1] Sec. 10, art. VII, relating to compensation and qualifications of judges of the supreme and circuit courts, among other things provides: "They shall hold no office of public trust, except a judicial office, during the term for which they are respectively elected, and all votes for either of them for any office, except a judicial office, given by the legislature or the people, shall be void."

Sec. 3, art. XIII, provides:

"No member of congress, nor any person holding any office of profit or trust under the United States (postmasters excepted) or under any foreign power; . . . shall be eligible to any office of trust, profit or honor in this state." (Under this section the acceptance of any office of profit or trust under the United States vacates the office of a state officer. *State ex rel. Hazelton v. Turner* (1918), 168 Wis. 170, 169 N. W. 304.)

Sec. 256.02 (1), Stats., provides:

"Every person elected or appointed justice of the supreme court, or judge of the circuit court, . . . shall take, subscribe, and file the following oath:

"State of Wisconsin, ⎫ ss.
"County of . . . . ⎭

"I, the undersigned, who have been elected (or appointed) to the

On behalf of the petitioners it is argued that "the vice sought to be prevented by the adoption of the constitutional provision, and the laws enacted pursuant thereto, is clearly shown by defendant's conduct here under consideration. No challenge has, or can be made as to the validity of the statutory provision when applied to state nonjudicial offices. The breach of official trust and obligation is as great when applied to a candidate for the office of United States senator as it would be if applied to one for governor of the state. In either situa-

office of . . . , but have not yet entered upon the duties thereof, do solemnly swear that I will support the constitution of the United States and the constitution of the state of Wisconsin; that I will administer justice without respect to persons and will faithfully and impartially discharge the duties of said office to the best of my ability. Subscribed and sworn to before me this . . . day of . . . , 19. .

(Signature)"

Sec. 256.29 (1), Stats., provides:

"(1) *Attorney's oath.* Each person admitted to practice as a member of the bar of any court of this state shall subscribe the roll of attorneys to be kept by the clerk and shall in open court take an oath or affirmation of the tenor following, to wit: I do solemnly swear:

"I will support the constitution of the United States and the constitution of the state of Wisconsin;

"I will maintain the respect due to courts of justice and judicial officers;

"I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land;

"I will employ for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;

"I will maintain the confidence and preserve inviolate the secrets of my client and will accept no compensation in connection with his business except from him or with his knowledge and approval;

"I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;

"I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice. So help me God."

Sec. 256.29 (2), Stats., provides:

"*Unprofessional conduct.* It is hereby declared to be unprofessional conduct and grounds of disbarment for any attorney to violate any of the provisions of the oath prescribed by this section; . . ."

tion, to have a judge passing upon the rights of litigants appearing before him and using his judicial position and power to influence votes for his candidacy and others of his political party, constituted a violation of the state constitution and state laws and was in direct conflict with the duties and obligations of the trust which he assumed by his oath of office."

If the word "office" as used in the quoted provision of sec. 10, art. VII, Const., which provides that judges shall hold no office of public trust except a judicial office, applies to the office of United States senator, it is clear that the defendant violated the quoted provision of sec. 10.

We held in *State ex rel. Wettengel v. Zimmerman* (1946), 249 Wis. 237, 24 N. W. (2d) 504, that the state either by constitutional provision or statutory enactment could not prescribe qualifications in addition to those prescribed by the constitution of the United States of a candidate for nomination for the office of United States senator, and for that reason the provisions of sec. 10, art. VII, Const., were ineffective against such candidate for the office either at a primary or general election, and for that reason the supreme court had no jurisdiction to cancel a certificate of nomination issued by the state board of canvassers merely because the nominee therein named was a circuit judge.

That as applied to a candidate for the office of United States senator the times, places, and manner of holding elections for that office are those prescribed by the legislature of each state and therefore the right of Joseph R. McCarthy to have his name appear upon the ballots at the general election was a right guaranteed to him under the laws of the United States and could not be increased or diminished by a state action.    In the opinion in that case the matter of dual citizenship under our form of government was dealt with and what was said there need not be repeated here.

In this case we are dealing with a pure state matter over which the federal government neither has nor claims any juris-

diction. We are here inquiring into the conduct, duties, and obligations of the defendant as an attorney at law under the laws of the state of Wisconsin. The provision of sec. 10, art. VII, Const., that a circuit judge shall hold no office of public trust except a judicial office applied to the defendant before he became a candidate for the office of United States senator. His obligation under the provisions of sec. 10 were in full force and effect when he decided to become a candidate for the office of United States senator. While the state could not destroy or limit the defendant's right to become a candidate for that high office, it could and did prescribe his obligations as an attorney at law and a judge of the circuit court. That the office of a senator of the United States is an office of public trust admits of no doubt and needs no discussion.

On behalf of the defendant it is argued that the decision in *State ex rel. Wettengel v. Zimmerman, supra,* limited the scope of the public policy declared in the constitution and the statutory law of this state and that under the terms of that decision the defendant was completely justified in relying upon it as a guide for his subsequent conduct as well as a vindication of his conduct previous to that time; that all of the facts in relation to the matter were within the knowledge of the Board of State Bar Commissioners who took no action in the matter until a complaint was filed in this proceeding.

The argument seems to be an attempt to interpose a bar to this proceeding on the ground that the Board of State Bar Commissioners and the courts of the state of Wisconsin have been derelict in failing to bring this matter up for consideration for more than two years. It is considered that this argument has no merit.

The case of *State ex rel. Wettengel v. Zimmerman, supra,* was an original action in this court in which it was sought to enjoin the defendant from having his name placed upon the official ballot at the November election as a candidate for the office of United States senator. After hearing, this court

dismissed the petition for the reason that it had no jurisdiction to cancel a certificate issued by the state board of canvassers and to compel it to issue one designating Robert M. La Follette as the candidate of the Republican party.

On behalf of the defendant it is further argued that in offering himself as a candidate for the office of United States senator at the November election he pursued a course of conduct which he had a clear legal right to do as is admitted by state's counsel and which was not prohibited by any public policy established in the state of Wisconsin. It is considered that this proposition is unsound so far as public policy is concerned and does not touch the question at issue in this case. Whether the Board of State Bar Commissioners did or did not move promptly is immaterial here. However, it should be said that the matter was brought before the board by petition filed July 7, 1948. Thereafter the board proceeded with commendable promptness. It cannot be urged that the defendant has lost any rights by reason of the lapse of time, nor does the contention made on his behalf that he was misled by the decision of this court in *State ex rel. Wettengel v. Zimmerman, supra,* deserve discussion. His conduct from the beginning was in clear disregard of the provisions of sec. 10, art. VII, Const., and sec. 256.02 (2), Stats., which provide that the judge of any court of record shall be ineligible to hold any office of public trust except a judicial office during the term for which he was elected or appointed, except as provided by sec. 49.51 (1), which last-named provision has no application to the facts of this case.

We discover no support in reason or authority for the argument that there is a limitation either in the decisions of this court or in the statutes of this state on the public policy declared by the constitution and statutes. The argument that the constitutional provisions and the statutory enactment of a state cannot restrict the right of a member of the state judiciary to seek an office under the federal government is sound, but that

in no way limits or affects the application of the constitution and the statutes so far as state control over its officers is concerned.

While a circuit judge may become a candidate under the laws of the United States for the office of United States senator at an election held and supervised under state law, he nevertheless does so in defiance of the laws of the state, which are not effective to prevent his candidacy, but his conduct is nevertheless a clear violation of provisions of the constitution and the statute. As pointed out in *State ex rel. Wettengel v. Zimmerman, supra,* those who opposed the candidacy of the defendant did not give full weight to the fact that citizens of this country are subject to two governments. It is apparent that the defendant fell into the same error.[2]

We again call attention to the fact that the constitution, sec. 10, art. VII, provides that a circuit judge shall hold no office of public trust except a judicial office *"during the term for which they are respectively elected."* Sec. 256.02 (2), Stats., is to the same effect.

In this case the defendant was not only a candidate for the office of United States senator but was a holder of that office during the term for which he was elected circuit judge, although he was not a holder of the office of circuit judge and United States senator contemporaneously.

Under the facts of this case we can reach no other conclusion than that the defendant by accepting and holding the office of United States .senator during the term for which he was elected circuit judge did so in violation of the terms of the constitution and laws of the state of Wisconsin, and in so doing violated his oath as a circuit judge and as an attorney at law.

---

[2] In this connection the case of *MacDougall v. Green,* 335 U. S. 281, 69 Sup. Ct. 1, 93 L. Ed. 000, decided October 21, 1948, is called to our attention. That case dealt with the power of a state to prescribe the conditions under which a new political party might become entitled to a place upon an official ballot. So far as we are able to see it has no bearing upon the present controversy.

It is the contention of petitioners that, while the decisions of this court do not make a violation of the code of ethics a ground for disbarment, a violation of the principles therein enunciated is not infrequently used as a ground for disciplinary action.

This court said in *Hepp v. Petrie* (1925), 185 Wis. 350, 354, 200 N. W. 857:

"Lawyers of the English-speaking world have from time immemorial set up certain standards and observed certain practices in their relations with one another. Violation of these established practices or a failure to adhere to the standards so set up has always been considered unprofessional conduct, and, where moral turpitude is involved, is ground for disbarment. . . .

"The latest and perhaps the most complete statement of these matters is to be found in canons of ethics, adopted by the American Bar Association. . . . Such authority as these canons have is derived not from the fact that they are approved by the American Bar Association but because they are statements of principles and rules accepted and acknowledged by reputable attorneys wherever the common law of England obtains, and are recognized and applied by courts in proper cases. *Ellis v. Frawley,* 165 Wis. 381, 161 N. W. 364."

It is almost universally held that misconduct of an attorney which discloses a lack of moral qualifications may furnish a ground for disbarment, and the fact that an attorney may be a judicial officer at the time of breach of his duties as a judge does not exempt him from disciplinary action by a court where proper grounds therefor appear. This matter was dealt with at length in *In re Stolen* (1927), 193 Wis. 602, 214 N. W. 379, 216 N. W. 127, and what was said there need not be repeated here.

Counsel for the petitioners called to our attention the fact that when Mr. Chief Justice CHARLES E. HUGHES became a candidate for the office of President of the United States he resigned his office. In that case there was no constitutional provisions or statutory enactment applicable to the situation

of Judge HUGHES such as we have here in this state. His sense of propriety did not permit him to be a candidate for a public office while holding a judicial office.

In response to this suggestion counsel for the defendant called attention to the fact that Vice-President ALBEN W. BARKLEY, at the time of his election to the United States senate, was judge of McCracken county court, Kentucky, and served as such until his election to congress. Senator HOMER FERGUSON was circuit judge for Wayne county, Michigan, and served as such judge until elected to the United States senate on November 3, 1942. Other similar examples are called to our attention. The conduct of other persons under the same or similar circumstances may have some bearing upon the question of the moral quality of the defendant's behavior but are not relevant on the question of the legal consequences of defendant's conduct.

Canon 30 of the canons of judicial ethics, adopted by the American Bar Association, is set out in the margin.[3]

No facts are alleged in the petition which charge that the defendant is guilty of any violation of Canon 30 except his failure to resign when he became a candidate for office of United States senator. Under the provisions of the constitution and statutes of this state resignation would not have changed the result. It is holding an office of public trust during the term for which he is elected that is forbidden.

---

[3] While holding a judicial position he [a judge] should not become an active candidate either at a party primary or at a general election for any office other than a judicial office. If a judge should decide to become a candidate for any office not judicial, he should resign in order that it cannot be said that he is using the power or prestige of his judicial position to promote his own candidacy or the success of his party.

If a judge becomes a candidate for any judicial office, he should refrain from all conduct which might tend to arouse reasonable suspicion that he is using the power or prestige of his judicial position to promote his candidacy or the success of his party. He should not permit others to do anything in behalf of his candidacy which would reasonably lead to such suspicion.

While it is true that the canons of ethics, both those governing the conduct of lawyers and of judges, set up standards which should be faithfully observed by those to whom they are applicable they do not amount to rules of conduct for which a lawyer or a judge may be punished as for a misdemeanor or a crime. A violation of the canons may or may not involve moral turpitude, depending on the circumstances.

In his answer the defendant admits the facts alleged in the petition. His denials set forth in paragraphs 5, 6, and 7 of the answer raise only questions of law. The only matters alleged by way of excuse or justification are that the defendant ran for the office of United States senator openly and without concealment and that defendant's actions were never complained of or criticized by the Board of State Bar Commissioners. A violation of the law has the same legal consequences whether it is done openly or surreptitiously.

This is a special proceeding under sec. 256.28, Stats., relating to the suspension and disbarment of attorneys. In these cases punishment is not and should not be a primary consideration. Under sec. 256.28 a lawyer found guilty of unprofessional conduct or an act involving moral turpitude may be suspended or disbarred from practice, but no other penalty is provided. The question for consideration is, Does the evidence in this case show that the defendant is so lacking in moral sense and appreciation of the relation of attorney and client that he should not be permitted in the public interest to continue the practice of law? Or, stated in other words, Does the evidence show such a degree of moral turpitude on the part of the defendant as to make him an unsafe person to practice law? *State v. Kern* (1930), 203 Wis. 178, 233 N. W. 629.

No valid excuse or justification can be offered for the defendant's violation of the oath which he took as an attorney and as a circuit judge. While the violation was clearly in connection with defendant's office as circuit judge, in this

proceeding this court is not concerned with the conduct of the defendant as a circuit judge except as it bears upon the question of his moral turpitude. The defendant is not charged nor are there any facts alleged which show that he has been guilty of unprofessional conduct as that term is defined in sec. 256.29 (2), Stats.[4]

While section 30 of the judicial canons declares that when a judge seeks a nonjudicial office he should resign, and thus sets up a standard of conduct which in the public interest should be observed, the state has not considered it a matter of such importance as to embody it in its statutory law.

By ch. 134, Laws of 1923, it was provided that the office of any judge should become vacant upon his becoming a candidate for or accepting nomination for election or appointment to any office of public trust other than a judicial office during the term for which he was elected or appointed. It was further provided that any judge who accepted the nomination for election or appointment to any office other than a judicial office during his term should be guilty of a felony and might be punished by imprisonment in state's prison for not more than five years nor less than one, or fined not more than $5,000 nor less than $1,000, or both such fine and imprisonment. It was further provided that such candidacy or acceptance of election or appointment should deprive a judge of his rights as a citizen and that he should thereafter be ineligible for any

---

[4](2) *Unprofessional conduct.* It is hereby declared to be unprofessional conduct and grounds of disbarment for any attorney to violate any of the provisions of the oath prescribed by this section; or to stir up strife and litigation; or to hunt up causes of action and inform thereof, in ,order to be employed to bring suit, or to breed litigation by seeking out those having claims for personal injuries or other grounds of action in order to secure them as clients; or to employ agents or runners for like purposes or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases or business to his office, or to remunerate policemen, court or prison officials, physicians, hospital attaches or others who may succeed in influencing the criminal, the sick, the injured, the ignorant or others to seek his professional services.

state, county, or municipal office of public trust until pardoned. These provisions were repealed by ch. 180, Laws of 1943, and no enactment creating a similar offense has since been passed.

We are not unmindful of the fact that JAMES R. DOOLITTLE of Racine was elected circuit judge in 1853, and in 1857 was elected to the United States senate and accepted the office and served for six years; that CHARLES M. WEBB, a circuit judge, became a candidate for the United States senate; he was subsequently re-elected circuit judge and held that office until his death; that HENRY GRAASS, a circuit judge, was candidate for the office of congressman and after his defeat was repeatedly re-elected circuit judge and held that office until his death.

The candidacy of a circuit judge, in effect, pledges him to accept the office if elected. The constitutional provision was intended to deter judges from political activities and there is little difference in the moral quality of being a candidate and holding the office if elected. It may have been argued that sec. 10, art. VII, Const., applied only to state offices of public trust. The subsequent language of the section that all votes cast for circuit judges by the legislature or the people makes perfectly clear that the office of United States senator was included. At the time of the adoption of the constitution United States senators were elected by the legislature. Neither the defendant nor the persons named could plead ignorance of the law.

In our society moral standards are derived in large part from Christian teaching and are reflected more or less accurately in what is termed "public opinion," which is the consensual judgment of the general public. In determining the moral quality of defendant's conduct some consideration must be given to the character of the oath which he took.

The official oath to which the defendant subscribed does not affirm the present existence of a fact, and relates to the future conduct of the affiant. The affiant solemnly promises that

*he will* support the constitution of the United States and the constitution of the state of Wisconsin, and that *he will* administer justice without respect to persons, and that *he will* faithfully and impartially discharge the duties of his office. Such an oath is called a promissory oath. There is a violation of the oath if and when the affiant accepts an office of public trust other than a judicial office.

Violation of an oath of office does not constitute perjury as that offense is defined in the law. *State v. Evans* (1938), 229 Wis. 405, 282 N. W. 555. 2 Bishop, Criminal Law (9th ed.), p. 770, sec. 1026.

In 1 Hawkins, P. C. (8th ed.), 431, first published in 1716, a standard text on English criminal law, the rule is stated thus:

"Also from what hath been said it appears that the notion of perjury is confined to such public oaths only as affirm or deny some matter of fact, contrary to the knowledge of the party; and, therefore, that it doth not extend to any promissory oaths whatsoever; from which it clearly follows, that no officer, public or private, who neglects to execute his office in pursuance of his oath, or acts contrary to the purport of it, is indictable for perjury in respect to such oath; yet it is certain, that his offense is highly aggravated by being contrary to his oath, and therefore, that he is liable to the severer fine on that account." See 4 Cooley's Blackstone (4th ed.), p. 137.

The violation of the official oath is not grounds for impeachment, which is a matter over which the courts have no jurisdiction. 43 Am. Jur., Public Officers, p. 29, sec. 179. Impeachment lies only for high crimes and misdemeanors unless statutes provide otherwise.

Moral turpitude, which is the only ground alleged as a basis for discipline in this case, has been defined as follows:

"Moral turpitude is an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

*In re Henry* (1909), 15 Idaho, 755, 758, 99 Pac. 1054; same case 21 L. R. A. (N. S.) 207.

In 27 Words and Phrases (perm. ed.), p. 553 *et seq.,* under the title "Moral Turpitude" may be found many cases in which the meaning of that phrase has been considered.    A number of quotations from the decisions of courts are given under the heading "Disbarment Proceedings."

In *United States ex rel. Ciarello v. Reimer* (D. C. 1940), 32 Fed. Supp. 797, 798, it was held :

"That term ['moral turpitude'] is vague and indefinite, but imports an 'act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general contrary to the accepted and customary rule of right and duty between man and man.' "

In the case of *United States v. Carrollo* (D. C. 1939), 30 Fed. Supp. 3, it was held that one may be guilty of a felony or infamous crime without being guilty of crime involving moral turpitude so as to authorize deportation.

In *In re Jacoby* (1943), 74 Ohio App. 147, 155, 57 N. E. (2d) 932, it is held :

". . . moral turpitude is anything done contrary to justice, honesty, principle or good morals.    It is also defined as an act of baseness, vileness, or depravity in the private or social duties which a man owes to his fellow men or to society in general contrary to accepted and customary rules of right and duties between man and man."

Whether a person is guilty of moral turpitude depends upon the circumstances of each case.    The same rule cannot be applied to every case involving a violation of law.

While the act of the defendant subjects him to just censure it is one in a class by itself which is not likely to be repeated. It did not meet the condemnation of a majority of the voters at the 1946 election.    The manner in which the legislature dealt with breaches of the constitution and statute relating to

judges discloses that it withdrew its first judgment and left the matter, so far as it was concerned, to the condemnation of the electorate. In the act repealing ch. 134, Laws of 1923, the legislature did not in any way characterize an act done in violation of the constitutional provision under consideration.

The defendant practiced law for many years and in his relation to his clients and the courts, so far as the record shows, he has never been derelict in the discharge of his duties and obligations as a lawyer. While the defendant is guilty of an infraction of the moral code, upon reason and authority it cannot be said that under the facts of this case the failure of the defendant to keep his solemn promise to support the constitution made when he became an attorney and a circuit judge discloses such a degree of moral turpitude that he is unfit to discharge the duties of an attorney at law.

The petitioners demurred to the answer of the defendant. This demurrer raised the question of the sufficiency of the petition. The conclusion which we have reached requires us to hold that the petition does not state facts sufficient to warrant the court in adjudging that the defendant be suspended or disbarred. For the reasons stated the petition must be dismissed.

The petition is dismissed.