### 71756. POPE v. THE STATE.
(347 SE2d 703)

POPE, Judge.
Robert Daniel Pope brings this appeal from his conviction of forgery in the first degree. *Held*:

Construed most strongly in favor of the State, the evidence of record shows the following: Appellant is an attorney of some four years' experience and is licensed to practice law in this state. In October of 1984 Mr. and Mrs. Johnny Morrison entered into a contingent fee agreement with appellant whereby he was employed to recover damages for pain and suffering, etc., on behalf of the Morrisons' minor daughter, who had been injured when struck by a car. Neither the State nor appellant produced a copy of the employment agreement.

The evidence is in considerable dispute as to the amount of time appellant spent working on the case. However, the record does disclose that appellant prepared and filed a claim for $2,500 in medical benefits available under the no-fault provision of the insurance policy of the car's driver. The adjuster for the insurance company testified that there was never any dispute that the $2,500 would be paid to the Morrisons, and that same would be paid upon receipt of proof of the medical bills and a medical report. On November 13, 1984 a check in the amount of $2,500 was delivered by the adjuster to appellant; the check was drawn on the account of the insurance company and made payable to the Morrisons. Either on the same day or one or two days later appellant negotiated the $2,500 check at a local bank; he had a cashier's check in the amount of $1,500 made payable to the Morrisons naming the insurance company as the remitter and retained the balance for himself. Appellant explained his actions by testifying that the Morrisons had recently directed him not to file suit against the insurance company, thereby effectively precluding him from receiving any remuneration under the contingency in the employment agreement. Appellant figured that he had already put 40 hours' work into the case and under the theory of quantum meruit, he was thus entitled to the $1,000. (A police officer investigating the charges against appellant testified that appellant told him that the $1,000 represented the 40% appellant was entitled to under his employment contract with the Morrisons; appellant denied the statement.) However, the letter from appellant to the Morrisons made no mention of his negotiation of the $2,500 check from the insurance company, but rather identified the $1,500 cashier's check as being from the insurance company. There is nothing in the letter explaining the insurance company's purported $1,500 payment. Thereafter, despite repeated attempts to obtain information from appellant, the Morrisons were unable to obtain any explanation regarding the purpose of the $1,500 check; they were simply told to cash it. Also, appellant never told the Morrisons that he had negotiated the $2,500 check from the insurance company and retained $1,000 of that amount in payment for his services.

The bank teller who negotiated the $2,500 check for appellant testified that appellant told her that the Morrisons had endorsed the check. Appellant was also required to endorse the check and did so "as their attorney at law." Appellant denied making the statement to the teller but admitted that he had printed the Morrisons' names on the back of the check. He contends he was authorized to do so pursuant to his employment as the Morrisons' attorney; the Morrisons denied giving appellant any such authority.

1. Appellant's first three enumerations of error relate to the authority of an attorney to endorse a client's name upon a check made

payable to the client. " 'As a general rule an attorney can endorse his client's name to negotiable instruments payable to the order of his client only when he has been expressly authorized to do so . . . However, the power to make an endorsement has been implied where it is a mere matter of form to enable the attorney to effect the purpose for which he was employed by the client. . . .' Moreover, an attorney having an interest in the collection in the nature of a commission for services in effectuating the collection, has authority to endorse the name of his client to whom the check is made payable, by himself as attorney, in order that he may deduct the commission fees before remittance of the collection to the client. . . . There can be no forgery where the attorneys have authority to endorse the name of their client on a check payable to the client, by themselves as attorneys." *John Bean Mfg: Co. v. Citizens Bank*, 60 Ga. App. 615, 617-18, 619 (4 SE2d 924) (1939).[1]

The issue of appellant's *implied* authority to endorse the Morrisons' names on the subject $2,500 check was hotly disputed at trial, and the evidence on this issue was in sharp conflict. Based upon the record here, we cannot state that the evidence demanded a finding on this issue in favor of appellant. Rather, viewing the evidence most strongly to support the verdict, we find that any rational trier of fact could have found appellant guilty of forgery in the first degree beyond a reasonable doubt. See *Jones v. State*, 141 Ga. App. 17 (232 SE2d 365) (1977). Compare *Barron v. State*, 12 Ga. App. 342 (7) (77 SE 214) (1913), where the defendant's conviction for forgery was reversed because the instrument defendant executed purported on its face to have been executed by him as agent of the principal, although he had in fact no authority from such principal to execute same. "To constitute forgery, the writing must purport to be the writing of another than the person making it." Id. at 343. In the case at bar there was evidence of record by which the jury was authorized to find that appellant had falsely endorsed the Morrisons' names on the $2,500 check. The holding in *Bailey v. United States*, 13 F2d 325 (2) (9th Cir. 1926), is also distinguishable from the case at bar. In *Bailey*, the defendant attorney was still employed as such at the time of the alleged forgery. Here, appellant testified that he negotiated the check because the Morrisons had instructed him to cease his efforts on their behalf under the employment agreement prior to his receipt of the

---

[1] It appears that the rule set forth in *John Bean* is a minority view, a majority of jurisdictions having adopted the view that the mere existence of the attorney/client relationship does not alone create an implied authority for counsel to endorse his client's name on a negotiable instrument. *Florida Bar v. Allstate Ins. Co.*, 391 S2d 238, 240-41 (Fla. App. 1981). See *State v. Musselman*, 667 P2d 1061, 1067-68 (Utah 1983); Annot., 37 ALR2d 453, 491-97 (1954). See also *Vandiver v. McFarland*, 179 Ga. App. 411 (346 SE2d 854) (1986).

check. It follows that the trial court did not err in denying appellant's motion for directed verdict on the implied authority issue. See generally *Humphrey v. State*, 252 Ga. 525 (1) (314 SE2d 436) (1984). Furthermore, in light of the foregoing discussion, we find no ground for reversal in the trial court's charge to the jury on this issue.

2. Appellant also moved for directed verdict on the ground that his negotiation of the $2,500 check and retention of $1,000 from the proceeds was authorized under OCGA § 15-19-14 (a): "Attorneys at law shall have a lien on all papers and money of their clients in their possession for services rendered to them. They may retain the papers until the claims are satisfied and may apply the money to the satisfaction of the claims." Our Supreme Court has held that this Code section "must be understood to authorize the application of client funds held by an attorney to the satisfaction of *liquidated* sums owing to the attorney." (Emphasis supplied.) *In the Matter of Kunin*, 252 Ga. 310, 311 (313 SE2d 697) (1984). A "liquidated claim" is one the amount of which has been agreed upon by the parties involved or is fixed by operation of law. Black's Law Dictionary at 839 (5th ed. 1979). As there was no evidence of record that appellant's claim for attorney fees had been agreed upon or fixed by operation of law, the trial court properly rejected his motion for directed verdict on the ground that he had a valid lien on the $2,500 check under OCGA § 15-19-14 (a). It follows that the trial court also properly rejected appellant's numerous requests to charge on this issue.

3. Appellant assigns error to the trial court's overruling his objection to testimony by a State's witness (an attorney) relating to an advisory opinion of the State Disciplinary Board of the State Bar of Georgia. Following the overruling of appellant's objection, the witness was asked if there were any standards governing charges by an attorney on PIP claims. He responded: "[T]here's an advisory opinion from the State Disciplinary Board that's dated January the 20th, 1984, advisory opinion number 37, which states, 'The taking of a contingency fee for the filing of a routine undisputed PIP claim is unreasonable and a violation of directory rule [DR] 2-106 (B) (1) and [S]tandard 31 (b). A contingency fee arrangement may be proper in unusual cases where the payment of PIP benefits are not assured.' And that specific directory rule from the State Bar of Georgia is under DR2-106, Fees for Legal Services. And under section B of that directory rule which comes . . . under Canon [2] which is rule 3-102, 'A lawyer should assist the legal profession in fulfilling its duty to make legal counsel available.' And there, specifically directory rule 2-106, under A, says, 'A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee.' Under section B, 'A fee is clearly excessive when after a review of the facts a lawyer of ordinary prudence would be left with a definite firm conviction that

the fee is in excess of a reasonable fee.' And then it has certain factors spelled out in the advisory opinion that deals with undisputed PIP claims. It cites section one which is, 'The factor is the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.' " Appellant again objected to this testimony, and the trial court instructed the jury sua sponte that "the evidence is being admitted solely for the purpose of it showing, if it does show, and you're to be the judges of whether or not it does show, whether or not this may bear upon the requisite intent on the part of the Defendant to commit the offense for which he is on trial, and for that purpose and that purpose alone. You will not take it for any other purpose."

In addition to challenging the relevancy and materiality of the foregoing testimony, appellant also objected on the ground that any violation of State Bar rules would not be equivalent to violation of the criminal laws of this state, and that this testimony would "leave the wrong impression" with the jury. We are compelled to agree. Intent to defraud is an essential element of the crime of forgery in the first degree. OCGA § 16-9-1 (a). Such intent is seldom capable of proof by direct evidence. *Jones v. State*, supra. In the case at bar, however, notwithstanding the trial court's cautionary instructions, the challenged testimony left the jury with the unmistakable impression that if they found that appellant had violated the cited State Bar rule, then they could also find that he intended to defraud the Morrisons, thus providing the only "direct" evidence of record of this essential element of the crime.

In *Marcus v. State*, 249 Ga. 345, 346 (290 SE2d 470) (1982), our Supreme Court noted "that behavior which might be unethical and might even subject an attorney to discipline by the State Bar does not necessarily rise to the level of criminal conduct. When judging criminal conduct, the court may not apply to an attorney a standard different from that applied to a layman. To do so would raise grave equal protection questions. It is therefore essential that we not confuse possibly unethical conduct with criminal conduct. While these types of conduct may be similar, they are not synonymous in every case." "Attorneys at law must maintain a high standard of honesty, but when accused of crime they are entitled to a fair trial and cannot be convicted except according to the established rules of procedure and the law in such cases made and provided." *People v. Ehle*, 273 Ill. 424, 434 (112 NE 970) (1916). "While it is true that the canons of ethics, both those governing the conduct of lawyers and of judges, set up standards which should be faithfully observed by those to whom they are applicable[,] they do not amount to rules of conduct for which a lawyer or a judge may be punished as for a misdemeanor or a crime. A violation of the canons may or may not involve moral turpitude,

depending on the circumstances." *State v. McCarthy*, 255 Wis. 234, 246 (38 NW2d 679) (1949). Cf. *East River Savings Bank v. Steele*, 169 Ga. App. 9 (311 SE2d 189) (1983), wherein this court held that an alleged violation of a rule of the Code of Professional Responsibility, standing alone, could not serve as a legal basis to support a civil action seeking money damages based on an intentional infliction of emotional distress. See also *Cranford v. Cranford*, 120 Ga. App. 470 (4) (170 SE2d 844) (1969). " 'A criminal proceeding has for its purpose the punishment of the accused if he is found guilty. A disciplinary proceeding against an attorney is not intended for his punishment, but is for the protection of the public, the courts, and the legal profession.' " *Zitny v. State Bar of Cal.*, 51 Cal. Rptr. 825, 827, n. 1 (415 P2d 521) (Cal. 1966). See *In the Matter of Nicholson*, 243 Ga. 803, 807 (257 SE2 195) (1979); *Jacobs v. State*, 200 Ga. 440, 445 (37 SE2d 187) (1946); *Williford v. State*, 56 Ga. App. 840 (3) (194 SE 384) (1937).

Clearly, evidence of disciplinary action taken by the State Bar against an attorney would be unfairly prejudicial if admitted during the course of a criminal trial based upon the same conduct. See *Jacobs v. State*, supra at 441. Cf. *Pruitt v. State*, 176 Ga. App. 317 (2) (335 SE2d 724) (1985), wherein the defendant was on trial for the crime of escape and the court held erroneous the admission of evidence of the result of an earlier, administrative disciplinary hearing regarding the same conduct. Likewise, evidence of State Bar rules which set forth standards of conduct for attorneys different from those applied to laymen should not be admitted, as it is inherently unfair to subject an attorney accused of a crime to a standard different from that applied to a layman. We thus conclude that the testimony here objected to was erroneously admitted. Because the issue of intent was hotly contested, we cannot say that it is highly probable that the error did not contribute to the judgment. See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).[2]

4. Under the facts in this case the trial court did not err in charging: "Criminal intent does not mean an intention to violate the law or to violate a penal statute, but means simply to intend to commit the act which is prohibited by a statute." See *Daniel v. State*, 179 Ga. App. 54 (1) (345 SE2d 143) (1986); *Kennedy v. State*, 46 Ga. App. 42 (1) (166 SE 442) (1932).

5. For the reasons set forth in Division 3, supra, appellant is entitled to a new trial.

*Judgment reversed. Deen, P. J., McMurray, P. J., Birdsong,*

---

[2] We are not called upon here to determine the validity or applicability of any jury charge based upon the subject State Bar rules. See generally *Cambron v. Canal Ins. Co.*, 246 Ga. 147 (8) (269 SE2d 426) (1980).

*P. J., Sognier and Benham, JJ., concur. Deen, P. J., also concurs specially. Banke, C. J., Carley and Beasley, JJ., dissent.*

DEEN, Presiding Judge, concurring specially.

The appellant enters criminal proceedings with a presumption of innocence in his favor. The state not only has a duty to present evidence proving guilt beyond a reasonable doubt, but in this particular case seemingly should also have the burden of producing a copy of the employment agreement, which should indicate that appellant did not have the authority to sign checks for his clients.

*John Bean Mfg. Co. v. Citizens Bank,* 60 Ga. App. 615 (4 SE2d 924) (1939) and *Brumbelow v. Northern Propane Gas Co.,* 251 Ga. 674 (308 SE2d 544) (1983) appear to give wide, almost blanket, authority to attorneys in handling their clients' affairs, yet this should not include endorsing a client's name on a check unless the authority for this is clear.

The dissent, without citation of authority, would affirm the conviction. It sanctions inclusion of civil canons of ethics in this criminal proceeding to show that the appellant was not entitled to the funds and that he had the intent to commit the criminal act. The dissent thus would broaden the burden of the appellant in his defense to the crime of forgery, which would not be the case if appellant were only a non-professional defendant.

The rule in Georgia is that criminal convictions, in the absence of a guilty plea, are inadmissible in a civil or tort action with regard to the same occurrence. *Continental Cas. Co. v. Parker,* 161 Ga. App. 614 (288 SE2d 776) (1982); *Cobb v. Garner,* 158 Ga. App. 110 (279 SE2d 280) (1981). The reverse would appear to be more compelling; that is, civil charges, canons, causes and consequences, in the absence of a confession or guilty plea should not be admissible or have any place in a criminal case. Even had appellant pled guilty or confessed to having breached the attorneys' canon of ethics in a civil proceeding or hearing before the State Bar, for example, in this regard there would still remain the serious question of whether this information should be allowed for the sole purpose of indicating intent in a criminal prosecution for forgery. "[N]o person can be convicted of any offense not charged in the indictment." *Goldin v. State,* 104 Ga. 549, 550 (30 SE 749) (1898).

We must reverse for the reasons set forth herein and outlined in the majority opinion.

CARLEY, Judge, dissenting.

I cannot agree that, for the reasons set forth in Division 3 of the majority opinion, appellant's conviction of the crime of forgery in the first degree must be reversed. The majority finds that reversible error

occurred when the trial court allowed testimony concerning the ethical standards of the State Bar of Georgia with regard to an attorney's conduct related to handling of PIP claims. The rationale underlying the majority's conclusion is that both binding Georgia authority and foreign cases emphasize that which may constitute unethical conduct for a lawyer does not automatically become criminal conduct. Without doubt, this view of the law is a correct one. However, in this case, the challenged evidence was not introduced for the purpose of showing that the conduct of the defendant was unethical and, therefore, criminal. In fact, in this case, the acts of the defendant constituting the essential elements of the crime — with the exception of intent — are admitted. The primary defense of the defendant was that he had a right to the money retained and even if he didn't he thought he did and, therefore, "intent," the sine qua non of the commission of a crime, was not present. Accordingly, the challenged evidence was clearly admissible to show that contrary to appellant's contentions, he as a lawyer knew or should have known that he was not entitled to the funds and that, therefore, the requisite intent was present. The majority quotes, but then ignores, the very clear and unambiguous instructions of the trial court which informed the jury that the evidence was admitted "solely for the purpose of . . . showing, if it does show, *and you are to be the judges of whether or not it does show*, whether or not this may bear upon the requisite intent on the part of the defendant to commit the offense for which he is on trial, *and for that purpose and that purpose alone. You will not take it for any other purpose.*" (Emphasis supplied.)

Therefore, I believe that there is no reversible error in this case and that appellant's conviction should be affirmed.

I am authorized to state that Chief Judge Banke and Judge Beasley join in this dissent.

DECIDED JULY 11, 1986.

*Richard D. Phillips*, for appellant.
*H. Lamar Cole, District Attorney*, for appellee.