## A94A1073. TIFTON BANK & TRUST COMPANY v. KNIGHT'S FURNITURE COMPANY, INC.
### (452 SE2d 219)

JOHNSON, Judge.

Shirley Knight, president of Knight's Furniture Company, Inc., retained attorney Ernest Yates to represent the company in negotiations with her insurance carrier in connection with a fire loss suffered at the company store in Tifton, Georgia. Knight authorized Yates to settle the company's claim under the policy for $320,000. The insurance company sent Yates an acceptance draft in that amount payable through First National Bank of Atlanta. The draft was made payable to "Knight's Furniture Company Inc & Ernest J Yates, Its Attorney." Yates presented the draft to Tifton Bank & Trust Company for deposit into his firm's trust account. When presented, the draft was endorsed on the back: "Knights Furniture Company, Inc by Ernest J. Yates, its attorney And Ernest J Yates." After Knight made repeated inquiries about the insurance proceeds and informed Yates of her pressing financial needs, Yates advanced her $16,863 from the trust account, never disclosing to Knight that he had already received, endorsed, and deposited the draft. Two weeks later Yates committed suicide. At the time of his death, only $55,717 remained in Yates' trust account. Knight's filed this conversion action against the Bank, alleging the Bank had wrongfully accepted the draft for deposit. The case was tried before a jury, which returned a verdict in favor of Knight's for $320,000, together with $25,000 in punitive damages and $80,000 in attorney fees and expenses of litigation. The Bank appeals.

1. The Bank contends that the evidence was insufficient to authorize the verdict because: (a) Yates, as attorney for Knight's, had authority to act on behalf of Knight's; (b) the Bank's actions were commercially reasonable; and (c) Knight's ratified the endorsement.

(a) Generally, a bank which accepts for deposit a check containing a forged endorsement is liable for conversion. OCGA § 11-3-419 (1) (c); *Trust Co. Bank of Augusta v. Henderson*, 185 Ga. App. 367, 369 (1) (364 SE2d 289) (1987). Forgery includes the endorser knowingly signing and presenting a check so as to give the appearance of authority which he does not have. See OCGA § 16-9-2 (a); *Henderson*, supra at 369. At trial, Knight testified that she had expressly forbidden Yates to endorse any draft on behalf of the company. This testimony was uncontradicted. We hold that because Yates did not have authority to sign and present the draft, he committed a forgery for which the Bank is liable.

In support of its argument to the contrary, the Bank relies upon *John Bean Mfg. Co. v. Citizens Bank of Gainesville*, 60 Ga. App. 615, 617-618 (4 SE2d 924) (1939), which held that an attorney employed to collect an account has implied authority to endorse his client's

name to a check in order to convert it to cash. Id. at 617. There is nothing in the *John Bean* opinion indicating that the client in that case expressly prohibited the attorney from endorsing his client's name on the check. The court found implied authority where apparently there was silence.

Any time authority as ancient as the *John Bean* case is relied upon, it raises a red flag. Consequently, we have carefully examined the history of the case. From September 1939 until the present, *John Bean* has only rarely been cited by Georgia's appellate courts for the proposition for which the Bank cites it here. One such case cites *John Bean* as support for its holding that an attorney may do whatever is necessary, including file suit, to effectuate the collection of a claim, *unless the client has given him direct instructions to the contrary. M & M/Mars v. Jones*, 129 Ga. App. 389, 392 (6) (199 SE2d 617) (1973). In another case, *Pope v. State*, 179 Ga. App. 739 (347 SE2d 703) (1986), a majority of this court held that the jury in a criminal case was authorized to find an attorney guilty of forgery for endorsing his clients' names on a settlement check, although it added that the endorsement was a forgery only if the writing purported to be his clients' writing. Id. at 741 (1). We note that *Pope* did not involve the question of a bank's liability for accepting a check containing such an endorsement. In a special concurrence in *Pope*, Presiding Judge Deen stated that the authority given attorneys by *John Bean* should not include endorsing a client's name on a check unless it is clearly authorized. *Pope*, supra at 745. As the majority noted in *Pope*, the holding in *John Bean* appears to be contrary to the view adopted in the majority of jurisdictions. Id. at 741, n. 1; see also *In re Johnson*, 552 NE2d 703 (Ill. 1990); *Third Nat. Bank &c. Co. v. Diamond Savings &c. Co.*, 540 NE2d 272 (Oh. App. 1987). The most recent case relying on *John Bean* for the proposition that an attorney is authorized to endorse his client's name on a negotiable instrument is *Titus v. Commercial Bank, Douglasville*, 214 Ga. App. 657 (448 SE2d 753) (1994). There the court held that an attorney has implied authority to endorse and deposit a check made payable to his client, regardless of the fact that the attorney was expressly denied authority to do so.

We are of the opinion that *John Bean*, to the extent it allows a bank to escape liability when it pays a check on an attorney's unauthorized endorsement of his client's name, is inconsistent with and is therefore superseded by Georgia's adoption in 1962 of the Uniform Commercial Code. See generally, *Jacobs v. Metro Chrysler-Plymouth*, 125 Ga. App. 462, 465 (1) (188 SE2d 250) (1972). In enacting OCGA §§ 11-3-419 (1) (c) and 16-9-2 (a), the legislature saw fit to hold banks liable for accepting for deposit checks endorsed without the authority of the payee, despite the holding in *John Bean*. The legislature could have but did not carve out an exception for attorneys. "All

statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts." (Citations omitted.) *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1, 9 (3) (178 SE2d 868) (1970). We note that in both *Titus* and the case before us the payees gave the banks absolutely no indication whatsoever that they even employed the attorneys, let alone that the attorneys were authorized to endorse the payees' names. To hold that there was authority under these circumstances is inconsistent with the well-established rule that there can be no apparent agency where there were no manifestations of authority by the *principal. Marcoux v. Northside Realty Assoc.*, 207 Ga. App. 99, 100 (1) (427 SE2d 72) (1993); *Addley v. Beizer*, 205 Ga. App. 714, 718 (423 SE2d 398) (1992).

We also find *John Bean* to be inconsistent with those rules governing the conduct of attorneys in this state. Georgia's Supreme Court has stated that it is a violation of State Bar Rule 4-102, Standard 4, for an attorney to endorse a draft on behalf of a client without permission. *In the Matter of Antinoro*, 253 Ga. 296 (319 SE2d 460) (1984); see also *In the Matter of Frederick M. Scherma*, 255 Ga. 206 (336 SE2d 570) (1985). Moreover, public policy would not allow attorneys to be exempt from laws against endorsing checks without authority. To borrow Judge Birdsong's language from *Vandiver v. McFarland*, 179 Ga. App. 411, 413 (346 SE2d 854) (1986), the public would "recoil in horror and deny it" if told an attorney can lawfully sign his client's name to a check made payable to the client and then deposit it into his own account even if the client expressly tells the attorney not to do so. Attorneys should have authority to endorse or present for deposit checks or drafts on which their clients are payees only when they have been expressly given that authority. Banks should not assume that such authority exists. Accordingly, to the extent that *John Bean* and *Titus* hold otherwise, they are overruled.

The measure of damages for conversion of an instrument is presumed to be the face amount of the instrument. See OCGA § 11-3-419 (2). Here, however, it is undisputed that Knight's received an advance from Yates' trust account with the Bank in the amount of $16,863. The Bank is entitled to a credit in that amount, for while the jury was authorized by the evidence to find against the Bank on the conversion issue, it was not authorized to award Knight's the face amount of the draft given this undisputed evidence. The judgment should have reflected a reduction in this amount, and therefore it is

vacated and the case remanded with direction that judgment be entered in the principal amount of $303,137.

(b) The Bank also argues that it is absolved from liability pursuant to OCGA § 11-3-419 (3) because it acted in good faith and in accordance with reasonable commercial standards. Whether reasonable commercial standards have been met is a question of fact to be resolved by the jury. The test is whether a reasonable person in accordance with reasonable commercial standards would be put on notice of some impropriety appearing either from the form of the instrument and its endorsements or from knowledge of facts outside the instrument itself. *Trust Co. of Ga. Bank of Savannah v. Port Terminal &c. Co.*, 153 Ga. App. 735, 740 (1) (266 SE2d 254) (1980). Where endorsements are irregular on their face, and when the draft is offered for deposit into the account of one not the payee, the bank has a duty to inquire to ascertain the authority of the depositor to endorse and deposit the payee's check. *Thornton & Co. v. Gwinnett Bank &c. Co.*, 151 Ga. App. 641, 647 (4) (260 SE2d 765) (1979). "On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict." (Citations and punctuation omitted.) *Henderson*, supra at 370 (1).

Here, there was evidence that the Bank failed to act in a commercially reasonable manner. The endorsements did not conform with the draft. That alone is sufficient to require that the Bank inquire whether Yates was authorized to endorse the draft as he did. But the evidence also showed the Bank had numerous other problems with Yates, who had a history of overdrafts in his trust account, as well as a history of mishandling loan proceeds with which he had been entrusted by the Bank as a closing attorney. The problems the Bank experienced with Yates were so severe that it instituted special banking procedures applicable to loans involving Yates as closing attorney. In addition, the teller operations manual adopted by the Bank requires that a teller verify a person's authority to endorse a corporate or company check. Knight's had no accounts with the Bank, and the Bank had no knowledge as to who was authorized to endorse drafts or checks on behalf of the company. Neither Knight herself nor any other officer or agent of Knight's ever gave Yates any written or verbal authority to endorse a check or draft on behalf of the company, but no one from the Bank ever contacted Knight or anyone else to confirm whether Yates had that authority. Under these circumstances, there was ample evidence from which a jury could find that the Bank had notice of an impropriety. Therefore, the jury was authorized to conclude that the Bank failed to act in a commercially reasonable manner when it made no inquiry into Yates' authority to endorse the draft before it allowed the draft to be deposited into his

account. *Thornton & Co.*, supra at 647-648 (4).

(c) The Bank's argument that it is not liable because Knight's ratified the endorsement by receiving a portion of the proceeds of the draft is without merit. For ratification to occur, the principal must have full knowledge of all material facts and accept and retain the benefits of the unauthorized act. *Hendrix v. First Nat. Bank of Savannah*, 195 Ga. App. 510, 511 (1) (394 SE2d 134) (1990). Knight's testimony that she had no knowledge that Yates endorsed the company's name on the draft or that the funds she received from Yates were from the proceeds of the draft was uncontroverted. Therefore, there was evidence from which the jury could find there had been no ratification by Knight's of Yates' unauthorized acts.

2. There was no evidence to support an award of punitive damages. The Bank was relying on the implied authority principle which was created in Georgia law in *John Bean*, supra, and which even this court followed in *Titus*, supra. Given the existing case authority when the Bank acted, there was no clear and convincing evidence of wilful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of a conscious indifference to consequences. OCGA § 51-12-5.1. See *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860, 862 (389 SE2d 355) (1989).

3. Similarly, the award of attorney fees was also erroneous because, based on the case authority existing at the time of the Bank's actions, a genuine controversy existed which precludes the award of attorney fees pursuant to OCGA § 13-6-11. *Read v. Benedict*, 200 Ga. App. 4, 6 (406 SE2d 488) (1991).

4. The Bank argues that the trial court erred in admitting evidence of overdrafts in Yates' trust account, of Yates' mishandling of loan proceeds as a closing attorney for the Bank, and special procedures instituted by the Bank regarding closings where Yates was the attorney. This enumeration is without merit.

Evidence is relevant if it logically tends to prove or to disprove any material fact which is at issue in the case. *Thompson v. Hardy Chevrolet-Pontiac-Buick*, 203 Ga. App. 499, 503 (2) (417 SE2d 358) (1992). The evidence in question was material to the issues of whether the Bank acted in a commercially reasonable manner and whether it acted in bad faith in allowing the draft to be deposited. Questions of relevancy are for the trial court and, absent an abuse of discretion, this court will not interfere. *Hayes v. Gary Burnett Trucking*, 203 Ga. App. 693, 694 (1) (417 SE2d 676) (1992). There was no abuse of discretion in admitting this evidence.

5. The Bank contends that the trial court erred in allowing Knight to testify that the outcome of the case would determine whether she would keep her home. Counsel stated no specific grounds for the objection at trial. The objection is therefore deemed waived.

*Eiberger v. West*, 165 Ga. App. 559 (1) (301 SE2d 914) (1983). In any event, the testimony was such that it is not likely that it affected the outcome of this case, and we find the error, if any, was harmless.

6. The Bank contends that the trial court erred in giving certain jury instructions, though it has offered no authority in support of this contention. We have carefully reviewed the charges complained of and find them to be correct statements of the law which are authorized by the evidence presented during the trial. This enumeration, therefore, is without merit.

*Judgment affirmed in part, reversed in part and case remanded with direction. Pope, C. J., McMurray, P. J., Birdsong, P. J., Beasley, P. J., Andrews, Blackburn, Smith and Ruffin, JJ., concur. Pope, C. J., Beasley, P. J., and Blackburn, J. concur specially as to Division 1.*

BEASLEY, Presiding Judge, concurring specially.

1. I concur in Division 1 but not in all that is written.

In this case we are eliminating the implied authority of an attorney to endorse the name of the attorney's client on a negotiable instrument. No longer does this authority arise out of the statutory provision that "[t]he agent's authority shall be construed to include all necessary and usual means for effectually executing it." OCGA § 10-6-50. When *John Bean Mfg. Co. v. Citizens Bank of Gainesville*, 60 Ga. App. 615 (4 SE2d 924) (1939) was decided, that was Code § 4-301.

Both then and now, the Code section continues: "Private instructions or limitations not known to persons dealing with a general agent shall not affect them. In special agencies for a particular purpose, persons dealing with the agent should examine his authority." It made no difference in *Bean* whether the agent was regarded as special or general because there were no private instructions or limitations to begin with, and the law itself provided the authority to endorse, so there was no requirement to inquire. In this case there *is* a limitation, placed by the client. Since we conclude that before the bank accepts the check for deposit it is obligated to assure that the attorney is authorized, such as by requiring the production of a power of attorney expressly authorizing the endorsement of the client's name, we position the attorney in the category of special agent.

Thus, what was once *not* a forgery because the law implied authority where there was no express authorization and no refusal to authorize, now is regarded as a forgery if it is undertaken without express authority. Once it is regarded as a forgery, of course, the bank is liable under OCGA § 11-3-419 (1) (c). One of the problems with implied authority, which the law gives, is that it contravenes a client's express refusal to grant authority.

By requiring express authority to endorse, which may be easily effected by a power of attorney, we are also limiting or altogether eliminating apparent authority as a defense. Of course, as the majority points out, there is no evidence in this case that, from the viewpoint of the bank, the depositor had apparent authority to sign the co-payee's name. The bank had no dealings whatsoever with the depositor's client and was totally unaware of how it conducted its affairs.

In *In the Matter of Antinoro*, 253 Ga. 296 (319 SE2d 460) (1984), the attorney did have a power of attorney given him by his clients, but he used it beyond its intended scope. His contingent fee contract made no mention of no-fault coverage, and the attorney used the power of attorney as authority to endorse his clients' names on drafts of no-fault payments as to which he was not entitled to a contingent fee. The Supreme Court agreed with the finding that the attorney improperly endorsed the drafts. (The attorney had also endorsed them without permission on behalf of the medical suppliers.) This constituted a violation of State Bar Rule 4-102, Standard 4: "A lawyer shall not engage in professional conduct involving dishonesty, fraud, deceit, or wilful misrepresentation. A violation of this standard may be punished by disbarment." That case, of course, did not address the liability of the bank.

*In the Matter of Frederick M. Scherma*, 255 Ga. 206 (336 SE2d 570) (1985), involved a situation in which the attorney used a *forged* power of attorney as authority to endorse the client's name on the client's benefit checks. This was a violation of Standard 4. The attorney had notarized the purported power of attorney without witnessing the signature of his client or obtaining the client's acknowledgment that the signature was his. The client did not give the attorney authority to endorse the checks. Again, although the bank's liability was not an issue in this disciplinary matter, it is clearly "implied" that the attorney must obtain express authority. Otherwise, absent a later ratification, the signature is a forgery. Since the attorney cannot sign without express authority, the bank cannot assume that the authority exists.

*Bean* recognizes the general rule, to which we return without exception: " 'As a general rule an attorney can indorse his client's name to negotiable instruments payable to the order of his client only when he has been expressly authorized to do so . . .' " *Bean*, supra at 617. The exception is the judicial creation of an implied authority " 'where it is a mere matter of form to enable the attorney to effect the purpose for which he was employed by the client.' " Id. at 617-618. The rule and the exception were quoted by the court in *Bean* as having come from CJS, although one of the cases cited is the Georgia case of *Patterson v. Southern R. Co.*, 41 Ga. App. 94 (151 SE 818) (1930). In

*Patterson*, there was a long course of dealings which authorized a finding of *apparent* authority of the attorney to settle the client's claim, for which the client was bound; the attorney had *implied* authority to endorse the client's name, insofar as the liability of the check's drawer was concerned, because it could have made the check payable solely to the attorney or could have given cash, to effectuate the settlement.

The court in *Bean* also cites the Georgia case of *C & S Nat. Bank v. Davis*, 54 Ga. App 836 (188 SE 589) (1936), where the bank was held liable, but distinguishes it because the attorney endorsed the client's name in his private capacity and not in his capacity as attorney *and* had specific instructions prohibiting him from endorsing the check. Yet the court in *C & S Nat. Bank* pointed out that "it should be assumed that a collecting attorney ordinarily has authority, as such, to indorse a check made payable to the order of his client." Id. at 837 (2). C & S National Bank could not rely on any such implied authority because the attorney did not sign as such. Nevertheless, the court in that case recognized that the issue of whether the attorney has implied authority had not been settled in Georgia and that the foreign authorities were in conflict. So it cannot be said that the court established a principle of "implied authority" in that case. In fact, it stated at the outset of its analysis that "[i]t is the general rule that a drawee bank is liable to the true payee of a check, which it has certified at his instance, if it pays out the money under a forged or unauthorized indorsement of his name, unless the payee is precluded, by his ratification, negligence, or facts creating an estoppel, from setting up the forgery or want of authority. At its peril, the bank must know that the one to whom it pays such an indorsed check prima facie had authority to make the indorsement, and its mere good faith is no defense." (Citing treatises and foreign cases.) Id. at 836 (1).

The court in *Bean* sought to justify the creation of implied authority by pointing out that the attorney has an interest in the collection in the nature of his own commission. It relied on the Restatement, not Georgia law. *Bean* at 619. The Restatement implied the authority as a natural step in obtaining his authorized commission: "If the agent is authorized to remit the amount in changed form, as where he is to deduct his commission, he would ordinarily be authorized to indorse the principal's name for the purpose of obtaining the bank draft or other thing which he is to remit to his principal." 1 Restatement of the Law, 172, § 72-e. That is a far cry from implying authority to sign a check from which there is no client-provided authority to deduct a commission. There would be no basis to assume that the attorney was entitled to a commission to be deducted from the check proceeds.

We are also rejecting, as the basis for creating implied authority,

OCGA § 15-19-6, which provides: "Without special authority, attorneys cannot receive anything in discharge of a client's claim but the full amount in cash." That simply does not extrapolate into authority to convert to cash a check made out in the client's name by endorsing the check in the client's name. In *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) (1983), the Supreme Court stated in footnote one that "the general application of this section is in regulation of the relationship between attorney and client and in matters in which the claim in question is for a sum certain. . . ." In construing OCGA § 15-19-5 the court confirmed that an attorney has *apparent* authority to enter into a binding agreement on behalf of a client so that, "where there is no challenge to the existence or the terms of an agreement but only to an attorney's authority to enter into it, the client is bound by its terms even in the absence of a writing or detrimental reliance on the part of the opposite party." Id. at 676-677.[1] That does not give rise to an authority implied by law, in derogation of an express prohibition by the client, to endorse a client's name to a check.

OCGA § 7-1-352 provides no relief to the bank in this instance. See *Trust Co. Bank of Augusta v. Henderson*, 185 Ga. App. 367, 368 (1) (364 SE2d 289) (1987), regarding the meaning of that statute.

2. I fully concur in the remaining divisions.

I am authorized to state that Chief Judge Pope and Judge Blackburn join in this special concurrence.

DECIDED DECEMBER 5, 1994.

*Groover & Childs, Denmark Groover, Jr., Gregory C. Sowell,* for appellant.

*Thomas H. Pittman,* for appellee.

---

[1] See *Vandiver v. McFarland*, 179 Ga. App. 411 (346 SE2d 854) (1986), which criticizes the rule of apparent authority established in *Brumbelow*. See also *Kaiser &c. v. Hancock*, 106 Ga. 217 (32 SE 123) (1898), which rejects an implied authority of an attorney to settle a claim.